# United States Court of Appeals

## For the First Circuit

No. 08-2391

REBECCA MATOVU,

Petitioner,

v.

ERIC H. HOLDER, JR.,[*] ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges

William P. Joyce, on brief for petitioner.
Hillel R. Smith, Trial Attorney, Office of Immigration
Litigation, Tony West, Assistant Attorney General, Civil
Division, and Terri J. Scadron, Assistant Director, Office of
Immigration Litigation, on brief for the respondent.

August 20, 2009

---

[*]     Pursuant to Fed. R. App. P. 43(c)(2), Attorney General
Eric H. Holder, Jr. has been substituted for former Attorney
General Michael B. Mukasey as the respondent.

**LYNCH**, **Chief Judge**.  Rebecca Matovu, a native and citizen of Uganda, seeks review of a final order of the Board of Immigration Appeals ("BIA") denying her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  We deny Matovu's petition.

I.

Matovu entered the United States as a visitor on July 24, 1997, petitioned for F-1 student status, and obtained authorization to remain in the United States until October 1, 2002.  On October 7, 2002, Matovu filed an application for asylum.  On July 26, 2004, the Department of Homeland Security denied her request and referred her application to an Immigration Judge ("IJ") to initiate removal proceedings.  Matovu conceded removability and sought asylum, withholding of removal, and protection under the CAT.  In the alternative, Matovu requested voluntary departure.

Matovu testified in support of her application in two separate hearings on August 22, 2005 and March 29, 2006.  She claimed that her father had been killed in 1982, during Uganda's civil war, by rebels now in control of the Ugandan government. Following her father's death, Matovu relocated with her brother to Nairobi, Kenya, where she resided until returning to Uganda in 1989.  Between 1994 and 1997, she visited Kenya multiple times, as well as India and Tanzania, always returning to Uganda.  In 1997, Matovu left Uganda and traveled to the United States.  Her two

children remained in Uganda with her mother, where, Matovu testified, they were attending government-run boarding school.

Matovu further testified that after her arrival in the United States the Ugandan government obtained information about her brother's whereabouts from his briefcase, which was stolen from him when he visited Uganda in early 2002. Over the months following the theft, secret agents approached her mother several times, seeking additional information about her brother. Matovu maintained that these Ugandan government operatives were responsible for the fatal shooting of her brother in May 2002 in Nairobi. She attributed the attack to the Ugandan government's fear that her brother might "point a finger at them" for past atrocities. Matovu added that a friend had reported that secret agents had sought information about Matovu's own whereabouts in the months prior to her testimony. Finally, she expressed fear at the prospect of returning to Uganda, in light of the Ugandan government's persistent interest in her family.[1]

In an oral decision on March 29, 2006, the IJ held that Matovu had failed to establish eligibility for asylum. The IJ first determined that Matovu's testimony was not credible, noting

---

[1] The retirement of the IJ who had presided over the first proceeding necessitated a complete rehearing before a second IJ. The rehearing provided the basis for the BIA's opinion, and the petitioner has not asserted any prejudice arising from the second proceeding in this appeal. We limit our discussion of Matovu's testimony to the hearing held on March 29, 2006.

that the "whole of [her] claim . . .is marred with inconsistencies and also with vague statements." The IJ cited "major discrepancies" between Matovu's asylum assessment memorandum and her testimony. The IJ noted, for instance, that Matovu had previously indicated that her brother had been killed by "unidentified gunmen" as a result of his efforts "to reclaim lost family property." The IJ also found she had failed to produce corroborative evidence with which to resolve this and other inconsistencies.

The IJ concluded that Matovu had failed to demonstrate past persecution in Uganda, observing in particular that, even on her own testimony, "nothing ever happened" to her during her years of residence in that country.

Turning to future persecution, the IJ held that Matovu had failed to show any nexus between the deaths of her brother and her father or otherwise corroborate her claim that she was being targeted by the Ugandan government as a result of her familial ties. The IJ emphasized Matovu's repeated travel to and from Uganda in the years following her father's death, as well as her children's attendance at a government-run school, as additional evidence that she had no cause to fear future persecution.

The IJ further held that the failure of Matovu's asylum claim meant that she could not satisfy the more stringent requirements for withholding of removal. The IJ also rejected her

application for CAT relief, citing the application's lack of any supporting evidence. Finally, the IJ granted Matovu voluntary departure.

The BIA dismissed Matovu's appeal in an opinion issued on September 30, 2008. It agreed with the IJ's determination that Matovu did not suffer past persecution in Uganda and further agreed "that there is simply no credible evidence that secret agents seek to persecute [Matovu] upon her return to Uganda as a result of her familial ties."

The BIA noted that the IJ had erred in failing to recognize evidence corroborating Matovu's brother's murder, and in placing too great an emphasis on Matovu's failure to produce corroborative documents that could not be reasonably obtained. The BIA deemed these errors harmless. The BIA found that even if Matovu's testimony were accepted as true, and the overlooked evidence regarded as establishing that her brother had been murdered, she still would not have "demonstrate[d] a nexus between the brother's and father's deaths, or a nexus between the deaths and [her] fear of future persecution in Uganda." Without evidence of such a link, the BIA found Matovu's claim to be "speculative at best" and affirmed that she was statutorily ineligible for asylum.

The BIA also agreed with the IJ's determinations regarding Matovu's ineligibility for withholding of removal and CAT relief. Accordingly, the BIA dismissed Matovu's appeal.

This petition for review followed.

## II.

We review BIA findings of fact under the substantial evidence standard. Scatambuli v. Holder, 558 F.3d 53, 58 (1st Cir. 2009). Under this deferential standard, we accept these findings so long as they are grounded in "reasonable, substantial, and probative evidence on the record considered as a whole." Shahari v. Gonzáles, 407 F.3d 467, 473 (1st Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted). Thus, we will affirm unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). When the BIA affirms the IJ's opinion but also examines some of the bases of that decision, we review both the IJ's and the BIA's opinions. Limani v. Mukasey, 538 F.3d 25, 30 (1st Cir. 2008).

An applicant for asylum bears the burden of establishing that he or she suffered past persecution or has a well-founded fear of future persecution on the basis of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see also Ratnasingam v. Holder, 556 F.3d 10, 13 (1st Cir. 2009). An applicant's fear of future persecution "must be both genuine and objectively reasonable." Aquilar-Solis v. I.N.S., 168 F.3d 565, 572 (1st Cir. 1999).

-6-

Matovu does not claim past persecution; she argues that the deaths of her father and brother give rise to reasonable fear of future persecution on the basis of membership in her nuclear familial social group. Substantial evidence supports the conclusion reached by the IJ and the BIA that Matovu does not face a likelihood of future persecution on her return to Uganda.

Matovu argues that the record compels her view, attributing the Ugandan government's killing of her father to his "outspoken views on the rebel movement" and the murder of her brother to the risk that he might seek compensation for his father's murder or disseminate information about past Ugandan government wrongdoing. In the end, Matovu "presents no evidence other than [her] own speculation" to support this link. Khalil v. Ashcroft, 337 F.3d 50, 55 (1st Cir. 2003). The IJ and BIA were "free to reject [her] speculation." Ziu v. Gonzales, 412 F.3d 202, 204 (1st Cir. 2005).

Matovu argues that the BIA should have remanded her asylum claim to the IJ to consider evidence the IJ had overlooked about her brother's murder. As the BIA held, the newspaper articles and affidavit verifying her brother's death do not link his murder to her father's death or otherwise connect either of their killings to Matovu's fear of future persecution. Substantial evidence likewise supports the BIA's conclusion that the letter from her son indicating that he is "very scared of people coming

-7-

around to our house all the time" fails to connect these individuals to the Ugandan government or establish a nexus between Matovu's brother's death and the threat of future persecution. Ultimately, the denial of Matovu's claim rested on her failure to produce evidence to support a link between her family members' deaths and her own fear of future persecution.[2] As the overlooked evidence "would not in any way shed light on this individualized issue," remand is unnecessary. Chhay v. Mukasey, 540 F.3d 1, 8 (1st Cir. 2008).

Matovu makes only perfunctory arguments in support of her eligibility for withholding of removal. As the BIA held, her claim that the "Ugandan government is slowly making [its] way through the Matovu family" is undermined by the same absence of evidence that prevented her from meeting the less stringent standard for asylum.

As to her claim for CAT relief, there is nothing to compel a factfinder's conclusion that Matovu would "more likely than not . . . be tortured if removed" to Uganda. 8 C.F.R. § 208.16(c)(2).

The petition for review is denied.

---

[2] The record is clear that Matovu's children and her mother continue to live peaceably in Uganda, further undercutting her claim of reasonable fear of persecution on the basis of familial association. Bakuaya v. Mukasey, 533 F.3d 39, 41 (1st Cir. 2008).