FILED

United States Court of Appeals
Tenth Circuit

May 12, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

VIRGINIA ORELLANA-MORALES;
HENRY VLADIMIR
PONCE-ORELLANA,

Petitioners,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 09-9553
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **McKAY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit Judge.

---

Petitioners, Virginia Orellana-Morales and her minor son Henry Vladimir

Ponce-Orellana, seek review of an order of the Board of Immigration Appeals

(BIA) insofar as it dismissed their appeal from the denial of relief under the

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

United Nations Convention Against Torture (CAT). Their CAT application was based on the threat of violence from criminal gangs that the government of their native El Salvador has allegedly been unable to control. The BIA agreed with the immigration judge (IJ) that petitioners had failed to show "it is more likely than not [they] will face torture by or with the acquiescence (to include the concept of willful blindness) of a member of the government of El Salvador upon their return to that country," as required for CAT relief under 8 C.F.R. §§ 1208.16, 1208.18. Admin. R. at 3. Exercising jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), (4), we deny the petition for review for the reasons explained below.[1]

---

[1]    The government insists we should dismiss the petition for review insofar as it pertains to Ponce-Orellana, because he did not file a separate CAT application. It cites case law holding that derivative applications for withholding of removal and CAT relief are not permitted. We decline to dispose of Ponce-Orellana's petition for review on this basis. First of all, as the BIA did not reject his CAT claim for this reason, to rely on it now would transgress basic limits on judicial review of agency adjudication. *See, e.g.*, *Carpio v. Holder*, 592 F.3d 1091, 1103 (10th Cir. 2010). Moreover, this case does not appear to involve a derivative application, properly understood. The case law cited by the government does not concern some formal requirement for separate applications (and the application form itself specifically asks the parent whether "[her] child [is] to be included in the application," Admin. R. at 345), but rather the substantive principle that one alien cannot seek relief based on a threat posed to another. Here, the BIA treated petitioners' CAT claim as based on the risk *both* of them faced upon removal. Admin. R. at 3 (reviewing "*respondents'* eligibility for CAT" by considering risk "*respondents* will face torture . . . upon their return" to El Salvador (emphasis added)); *see also id.* at 51-52 (IJ repeatedly referring to feared risk of torture relating to both mother and son). The straightforward disposition of petitioners' joint CAT application on the merits, with no indication of any formal deficiency as to the son, certainly suggests that the BIA and IJ found nothing improper in his inclusion on his mother's application.

Where, as here, "a single member of the BIA issues a brief order affirming an IJ's decision, this court reviews both the decision of the BIA and any parts of the IJ's decision relied on by the BIA in reaching its conclusion." *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009). We review the BIA's legal determinations de novo and its findings of fact under a substantial-evidence standard. *Id.* The latter standard is very deferential: "factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009) (internal quotation omitted). And this standard applies not only to historical facts, but to ultimate factual determinations, such as the existence of persecution, upon which an alien's qualification for relief may directly rest. *Id.* (following *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir. 2009), and *Nazaraghaie v. INS*, 102 F.3 460, 463 n.2 (10th Cir. 1996)). Thus, for petitioners to prevail, they must show that the record contains evidence sufficient to compel a finding that they are qualified for CAT relief, i.e., that it is more likely than not they will be subjected to torture by, or with the acquiescence of, government officials if they are returned to their home county. *See, e.g.*, *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005); *Matovu v. Holder*, 577 F.3d 383, 387 (1st Cir. 2009); *Malonga v. Mukasey*, 546 F.3d 546, 555 (8th Cir. 2008). The record here falls well short of compelling such a finding with respect to the gang violence petitioners cite as the basis for fearing their return to El Salvador.

In broadly agreeing with the IJ that petitioners failed to establish a risk of torture sufficient to qualify for CAT relief, the BIA effectively recognized two distinct deficiencies in petitioners' showing noted by the IJ: (1) an insufficient level of risk, *see* Admin. R. at 51; and (2) an inability to attribute the risk to government acquiescence or willful blindness, *id.* at 52-53. A brief summary of the record evidence will demonstrate why neither of these findings is vulnerable to challenge under the substantial-evidence standard.

As a general matter, no one disputes that El Salvador has a very serious problem with gangs and gang violence. Petitioner Orellana-Morales testified to that fact, which is amply supported by country report findings recited by the IJ. She also testified, again with corroboration in the country report, that government efforts to address the problem have not been very successful in stemming the growth of gangs. But neither petitioner's testimony nor the country report lends much support, let alone compelling support, for a claim that the government has acquiesced in or turned a blind eye to gang violence,[2] *see also Amilcar-Orellana v. Mukasey*, 551 F.3d 86, 92 (1st Cir. 2008); *Solis v. Mukasey*, 515 F.3d 832, 836 (8th Cir. 2008), or that it is more likely than not that any particular El Salvadoran will be tortured at the hands of gang members.

---

[2] The mere inability to prevent violence, which can support an asylum claim under a standard that requires only that a government be unwilling *or unable* to stop persecution, must be distinguished from the acquiescence required to support a CAT claim, for which government ineffectuality alone will not suffice. *See Marroquin-Ochoma v. Holder*, 574 F.3d 574, 579-80 (8th Cir. 2009).

Rather, petitioners' claim is more directly related to local circumstances, specifically involving petitioner Orellana-Morales' response to a hit-and-run accident in her home town of Nueva Conception. She witnessed the accident, in which a car ran over a child, and reported what she had seen, including the car's license plate number, to the police. Other witnesses did not come forward for fear of retaliation, which is common in El Salvador. Based on her information, the police arrested and jailed the young man who had been driving the car. The next day, petitioner, who worked at the mayor's office, spoke of the incident to the assistant mayor, who warned her to be careful because the driver's family was involved in gangs and drugs. The child eventually died in the hospital. Some time later, the driver's sister informed the vital statistics department at the mayor's office that her brother had died of leukemia in jail. When petitioner learned of this, she feared retaliation from the driver's family.

Thereafter, petitioner was approached outside her home by three strangers looking for ammunition and asking about a neighbor. She told them where the neighbor lived but said she did not know whether he was involved in selling ammunition. She thought the strangers were gang members, though there is no evidence to confirm that. One of them told her to be careful about talking or the ammunition could be aimed at her. She took this as a threat not about the sale of ammunition but about the accident. After this incident she became very worried for herself and her son. A few weeks later she left El Salvador. Her sister, who

-5-

still lives there, has since told her that unidentified persons called petitioner's former workplace asking to speak with petitioner after she left the country.

We agree with the BIA that the more specific events recounted above also do not make out a case for CAT relief. Basically, petitioner's claim is (1) the driver she identified belonged to a gang family, (2) the family has targeted her and her son for torture in retaliation, (3) the risk and reach of that threat is so great that they will more likely than not suffer torture whenever and wherever they return to the country, and (4) knowing this, the authorities would make no effort to protect them. To be entitled to relief here, petitioners must make a compelling showing on every one of these factual premises, and they have not.

Only the first premise is at all substantiated on the record. The second is merely an inference drawn on a very thin factual basis–an inference a reasonable adjudicator would clearly not be compelled to adopt. The third premise is sheer speculation on our record. The fourth potentially has general and local aspects, neither of which compellingly supports petitioners' case. Generally, as we have already noted, country reports do not demonstrate government acquiescence in gang violence. Locally, petitioners' assertion that town authorities would turn a blind eye to their situation is based on the fact that "neither the Mayor, nor the Assistant Mayor took any action except to tell [petitioner Orellana-Morales] to be very careful because she had essentially crossed a deadly gang family." Aplt. Opening Br. at 16. But there is no compelling reason to equate such a warning

-6-

with an expression of official abandonment, particularly as petitioners had not even been threatened by the family.[3] For all the record shows, the statement was nothing more than an exhortation for prudence, with no implications about the availability of official protection or assistance if and when prudence would suggest it might be needed. Indeed, the expression of concern it embodied could well have implied that petitioner should ask for assistance if that appeared necessary. It is the province of the IJ and BIA, not the reviewing court, to choose between such competing inferences. *Siewe v. Gonzales*, 480 F.3d 160, 167 (2d Cir. 2007). Finally, and perhaps most significantly, petitioner never testified that she asked for and was denied any form of assistance or protection.

Under our deferential standard of review, we must uphold the BIA's determination that petitioners failed to qualify for relief under the CAT.

The Petition for Review is DENIED.

<div style="margin-left:50%">

Entered for the Court

Monroe G. McKay
Circuit Judge

</div>

---

[3] There is no evidence that petitioner told anyone at the mayor's office about the later ammunition incident, itself only speculatively tied to the driver's family.