# United States Court of Appeals
## For the First Circuit

No. 09-2529

BUNTHA LY,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Boudin and Thompson, <u>Circuit Judges</u>.

<u>Joseph A. MacDonald</u> was on brief for petitioner.
<u>Tiffany Walters Kleinert</u>, Trial Attorney, Office of
Immigration Litigation, <u>Tony West</u>, Assistant Attorney General,
Civil Division, and <u>David V. Bernal</u>, Assistant Director, were on
brief for respondent.

July 28, 2010

**LYNCH**, **Chief Judge**.  Buntha Ly, a native and citizen of Cambodia, seeks review of a final order of the Board of Immigration Appeals ("BIA"), which upheld an Immigration Judge's ("IJ") denial of his request for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  We deny Ly's petition.

I.

Ly entered the United States on a tourist visa on April 15, 2000, and did not leave when his visa expired on October 14, 2000.  On November 22, 2000, Ly filed an application for asylum.  More than three years later, on February 6, 2004, the Department of Homeland Security initiated removal proceedings against Ly, who conceded removability and sought asylum, withholding of removal, and protection under the CAT.

Ly testified in support of his application at a hearing on May 12, 2008.  He also provided documentary evidence to corroborate his account.  We briefly summarize Ly's testimony, which the IJ found credible.

Ly was born in Cambodia in 1965.  In November 1983, when Ly was eighteen years old, two police officers stopped him on the way to school and forcibly conscripted him into the Cambodian military.  Ly served for eight years and achieved the rank of second lieutenant.  He left the military in 1991, following the

dissolution of his unit.  For the next two years, he worked a variety of jobs.

In 1992, Ly joined the National United Front for a Neutral, Peaceful, Cooperative, and Independent Cambodia ("FUNCINPEC").  As a party member, he made, posted, and distributed signs and flyers.  He also solicited campaign donations.  His activities were supervised by General Ho Sok, a senior FUNCINPEC member.

On May 25, 1993, FUNCINPEC won the national election.  However, the rival Cambodian People's Party ("CPP"), led by a man named Hun Sen, refused to yield power and threatened civil war.  The two parties ultimately agreed to a power-sharing arrangement.

Following the election, Ho Sok, now a government official, hired Ly as a police officer and assigned him to the department's anti-drug unit as a second lieutenant.  The police force included members of both FUNCINPEC and the CPP.  Ly reported to both Ho Sok and General Uno Hinko, a CPP member.  When he accepted his job as a police officer, Ly knew the work was dangerous and that he risked personal harm.

In 1996, acting on Ho Sok's orders, Ly led a team of thirty police and military officers to confiscate about 100 kilograms of marijuana that was being shipped by a man named Mong Rithy.  Rithy was a prominent CPP member and a close friend of Hun Sen.  After the marijuana had been seized, Rithy denied that it was

his, claiming it instead belonged to a FUNCINPEC member. Rithy also made death threats against the officers who had participated in the seizure. The incident created further tension between FUNCINPEC and the CPP.

In early July 1997, Hun Sen successfully led a violent CPP coup against FUNCINPEC. During the conflict, Ho Sok disappeared; Ly believes he was killed by the CPP.

Ly was one of many FUNCINPEC members in the police department who did not report for duty for one month after the coup. He returned to work after Hun Sen's newly appointed prime minister, a senior FUNCINPEC official, assured FUNCINPEC members that they could safely resume their duties.

In 1998, the CPP won the national election. However, FUNCINPEC officials continued to serve in the government. Ly remained an active FUNCINPEC member.

On June 16, 1999, Ly was ordered to confiscate about 100 kilograms of opium and arrest the individuals smuggling it, who were affiliated with Hun Sen. The seized opium was stored in the anti-drug unit's office "for a long time." Under pressure from international supporters of Cambodia's anti-drug efforts, General Heng Pao, a high-ranking CPP official and close associate of Hun Sen, publicly pledged to burn the opium. Heng Pao instead burned a "fake box" and sold the opium for profit.

-4-

Ly learned of Heng Pao's deception and investigated the opium sale, with help from his friend and fellow officer, Savoeun Sar. The two uncovered information about Heng Pao's buyer. But Heng Pao heard about Ly and Sar's inquiries and warned them to stay quiet about their discovery. Despite Heng Pao's warning, the details of the opium sale were eventually leaked to the public.

Some time after the leak, Heng Pao arranged for Sar to be dispatched to investigate an incident report. Upon arrival, Sar was fatally shot by two unknown individuals, who planted opium on his motorcycle. After Sar's death, Heng Pao accused Sar of having been a drug dealer.

Ly feared that he would suffer the same fate as Sar. He believed Heng Pao and the CCP were determined to eliminate all FUNCINPEC members from the anti-drug unit. On February 15, 2000, Ly received word from a friend that Heng Pao was planning to kill him like he had killed Sar. Ly moved his wife and two children to his mother-in-law's home in the countryside and stopped going to work. In April 2000, he fled Cambodia and traveled to the United States. Ly's family remained in Cambodia.

At some point after Ly's departure, two CPP-affiliated police officers came to his family's home. The officers were looking for Ly's son, who had allegedly "caused some injury to Hun Sen." The officers insisted that Ly's son appear in court or pay

$2,500 for "pain and suffering." When Ly's wife said she did not have the money, the officers hit her.

The officers noticed a photograph of Ly in his police uniform hanging on the wall. They asked who the man in the photograph was, and Ly's wife replied that it was her husband, who had moved to the United States. The officers said they were looking for him. Ly's wife ultimately paid the officers $500, after which they left, insisting that she had two weeks to pay them an additional $2,000. After this incident, Ly's family relocated to a village on the Thai-Cambodia border.

Ly's documentary evidence included, among other materials, a photograph of Ly in his police uniform, photographs of Sar's corpse, a letter from a FUNCINPEC official confirming Ly's party membership and warning that Ly faced danger if he returned to Cambodia, an affidavit from Ly's wife, and Ly's identification cards from the military, the police department, and FUNCINPEC. Ly also provided information and media reports on conditions in Cambodia.

The IJ found Ly's testimony credible but denied his petition because Ly had failed to establish a nexus between his fears and one of the five statutorily protected grounds. See 8 U.S.C. § 1101(a)(42)(A). The IJ found that Ly's fears were solely a product of "his having conduct[ed] himself honorably as an honest police officer in the past and potentially being in the future

-6-

victimized or perhaps even killed by corrupt police officers and criminals in the country of Cambodia." The IJ held that the failure of Ly's asylum claim meant he could not satisfy the more exacting requirements for withholding of removal and rejected Ly's application for CAT relief, since Ly had not claimed he would be tortured in Cambodia.

The BIA affirmed the IJ's denial of Ly's application for asylum and withholding of removal. The BIA concluded that Ly's fears were not related to a protected ground, citing the absence of "any evidence that the threats [Ly] received were even in part motivated by his political opinion." It found that Ly was instead "likely threatened to discourage him from reporting the actions of corrupt police officers." The BIA also rejected Ly's argument that he had a well-founded fear of future persecution on the basis of his membership in the social group "former police officers."

The BIA further agreed with the IJ's determination regarding Ly's ineligibility for withholding of removal and noted that he had failed to appeal the IJ's denial of CAT relief.

II.

When the BIA adopts and affirms the IJ's ruling but also examines some of the IJ's conclusions, we review both the BIA's and IJ's opinions. Matovu v. Holder, 577 F.3d 383, 386 (1st Cir. 2009). Our review of BIA and IJ findings of fact is for substantial evidence. Id. "Under this deferential standard, we

accept these findings so long as they are grounded in reasonable, substantial, and probative evidence on the record considered as a whole," id. (quoting Sharari v. Gonzáles, 407 F.3d 467, 473 (1st Cir. 2005)) (internal quotation marks omitted), and grant a petition only "if the record compels a conclusion contrary to that reached by the agency," Lopez Perez v. Holder, 587 F.3d 456, 460 (1st Cir. 2009).

An applicant for asylum must show that he suffered past persecution or has a well-founded fear of future persecution on grounds of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); Matovu, 577 F.3d at 386. A showing of past persecution gives rise to a rebuttable presumption of future persecution. Anacassus v. Holder, 602 F.3d 14, 19 (1st Cir. 2010). Absent such a showing, a petitioner may still qualify for asylum by providing "specific proof" that his fear of future persecution "is both subjectively genuine and objectively reasonable." Decky v. Holder, 587 F.3d 104, 110 (1st Cir. 2009) (quoting Castillo-Díaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009)) (internal quotation marks omitted).

Ly argues that the BIA and IJ erred by determining that he had failed to connect the risks he faced to one of the protected grounds. Even if the threats Ly received from Rithy and Heng Pao were sufficiently harmful to permit a finding of past persecution, cf. Butt v. Keisler, 506 F.3d 86, 91 (1st Cir. 2007), substantial

-8-

evidence supported the BIA and IJ's findings that these threats were not on account of a protected ground but were instead entirely motivated by Ly's steadfast performance of his duties as a police officer.

Ly knew that police work posed distinct risks when he opted for a career in law enforcement. His testimony provides no basis to conclude that these risks were exacerbated by his political opinions. The threats he faced, however serious, were triggered by his participation in specific drug investigations. Ly provided no evidence that either Rithy or Heng Pao were motivated by his party affiliation or that fellow FUNCINPEC-affiliated officers were systematically targeted. The threat Ly's family received after his departure is consistent with his having been targeted for his participation in drug seizures. To the extent that Ly's argument depends on his own assessment of Rithy and Heng Pao's motives, the IJ and BIA were "free to reject [his] speculation as to motive" despite "finding [him] credible as to historical facts." Ziu v. Gonzales, 412 F.3d 202, 204 (1st Cir. 2005); see also Hernandez-Cabana v. Mukasey, 262 F. App'x 287, 289 (1st Cir. 2008) (finding that threats received by a district attorney "were not on account of one of the five enumerated grounds").

Ly's effort to retroactively cast his activities as anti-corruption whistleblowing is also unavailing. Cf. Fedunyak v.

Gonzales, 477 F.3d 1126, 1129 (9th Cir. 2007) ("The act of whistle-blowing against corrupt government officials . . . may constitute political activity sufficient to form the basis of persecution on account of political opinion." (alteration in original) (quoting Grava v. INS, 205 F.3d 1177, 1181 (9th Cir. 2000)) (internal quotation marks omitted)). The record does not compel the conclusion that Ly attempted, let alone was targeted for, any such activity.

For these same reasons, substantial evidence supported the IJ's and BIA's determination that Ly's fears of future harm were unrelated to a protected ground. His remaining claims lack merit.[1] "While there may be scenarios where a government official involved in law enforcement should not be precluded from making an asylum or withholding claim, this is not such a scenario." Hernandez-Cabana, 262 F. App'x at 289 (citations omitted). Ly chose a dangerous profession and performed his duties honorably. But we cannot say the record compels us to reach a conclusion different from the IJ and BIA.

The petition is denied.

So ordered.

---

[1]    Ly's failure to present his argument for CAT relief to the BIA precludes our jurisdiction over this unexhausted claim. See, e.g., Jia Duan Dong v. Holder, 587 F.3d 8, 13 (1st Cir. 2009); Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006). Ly has not appealed the BIA's rejection of his withholding of removal claim.

-10-