Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 12-1266

SEGUNDO GUAMAN,
a/k/a Guaman Asuncion, a/k/a Punin Segundo,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Torruella, Stahl, and Thompson, Circuit Judges.

Adam Scott Elman on brief for petitioner.
Ada E. Bosque, Senior Litigation Counsel, Office of
Immigration Litigation, Civil Division, United States Department of
Justice, Stuart F. Delery, Acting Assistant Attorney General, and
William C. Peachey, Assistant Director, Office of Immigration
Litigation, on brief for respondent.

April 10, 2013

**STAHL, <u>Circuit Judge</u>**.  Petitioner Segundo Guaman, a native and citizen of Ecuador, petitions for our review of a decision by the Board of Immigration Appeals (BIA) affirming the denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).  The BIA's affirmance was based, among other things, on a finding by the Immigration Judge (IJ) that Guaman was not credible.  Because that adverse credibility determination was supported by substantial evidence, we deny the petition for review.

Guaman entered the United States without inspection in March 2000.  The Department of Homeland Security initiated removal proceedings in April 2007; Guaman conceded removability and applied for asylum, withholding of removal, and CAT protection.  He claimed to have been persecuted in Ecuador primarily on account of his membership in the indigenous Quichua tribe and his political opinion.  The IJ denied Guaman's application on two independent grounds, concluding that he was not a credible witness and that, in any event, he had failed to establish past persecution.[1]  The IJ based his adverse credibility determination on inconsistencies in

---

[1]  The IJ "err[ed] on the side of caution" and assumed that Guaman's failure to file for asylum within one year of his arrival in the United States was a result of his Post-Traumatic Stress Disorder.  <u>See</u> 8 U.S.C. § 1158(a)(2)(B), (D); 8 C.F.R. § 1208.4(a)(5).  The IJ emphasized, however, that he was "quite skeptical that the respondent did not submit his application for asylum because of post-traumatic stress disorder," and that his skepticism was "reinforced by the respondent's testimony that he simply did not know about asylum."

Guaman's testimony that the IJ determined were not attributable to Guaman's diagnosis of Post-Traumatic Stress Disorder (PTSD) or to translation issues during his merits hearing.

The BIA affirmed, examining the bases for the IJ's decision, and we now review both opinions. See Matovu v. Holder, 577 F.3d 383, 386 (1st Cir. 2009). Under the deferential substantial evidence standard, we must accept all factual findings, including the IJ's credibility determination, "as long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). In other words, we will reverse only if the record would "compel a reasonable factfinder to reach a contrary determination." Id.

The IJ's adverse credibility finding resulted from several inconsistencies between Guaman's testimony and the affidavit he submitted in support of his asylum application. Those inconsistencies are outlined in the decisions of the IJ and BIA, and we need not describe them in detail here. Guaman attacks the credibility finding on three grounds: (1) the inconsistencies upon which the IJ relied are "de minimis"; (2) they are also explained by Guaman's PTSD diagnosis; and (3) the IJ's failure to provide an interpreter in Guaman's native dialect was another "possible factor that impacted his ability to answer questions accurately."

Guaman's first argument -- that the inconsistencies are de minimis -- overlooks the fact that this case is governed by the REAL ID Act, which allows an IJ, considering the totality of the circumstances and all relevant factors, to base a credibility determination on "the consistency between the applicant's . . . written and oral statements . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). In this case, however, that does not matter, because the BIA concluded that some of the problematic testimony did indeed go "to the heart of the respondent's claim." Having carefully reviewed the record, we agree. The discrepancies were not minor, and they did not, as Guaman suggests, relate merely to dates. For example, he offered conflicting testimony as to whether he ever told anyone about his political affiliation, whether he was shot at or pistol whipped, how long he spent in the hospital after that incident, and whether he attended a crucial political meeting when he was around twelve years old or around eighteen years old. Such inconsistencies between a petitioner's statements in his asylum application and his testimony before the IJ "provide substantial evidence to support an adverse credibility determination." Phal v. Mukasey, 524 F.3d 85, 89 (1st Cir. 2008).

As for Guaman's claim that his contradictory testimony was a result of his PTSD, which impacts his ability to remember

-4-

exact dates and details of events, the IJ considered that explanation and found it insufficient. The IJ noted that Guaman had been able to recall events and dates with specificity in his asylum application and thus concluded that Guaman had not "lost memory of the events to which he testified," but rather had "not been able to relate these facts in a consistent manner, those being facts that he did indeed remember." We cannot say that the record here would "compel a reasonable factfinder to reach a contrary determination." Chen, 703 F.3d at 21; see also Zeru v. Gonzales, 503 F.3d 59, 71 (1st Cir. 2007) (upholding adverse credibility determination where IJ considered PTSD diagnosis but found it insufficient to explain applicant's inconsistent testimony).

Substantial evidence also supports the BIA's conclusion that the inconsistencies in Guaman's testimony were not caused by faulty translation during the hearing. We have read the hearing transcript; this is not a case in which "numerous translation difficulties" occurred that might undermine the IJ's adverse credibility finding. Kartasheva v. Holder, 582 F.3d 96, 107 (1st Cir. 2009). Though Guaman did request a Quichua interpreter in advance of the hearing, his attorney did not object when the IJ explained that it had been impossible to locate one and that it would be necessary to proceed in Spanish, assuming Guaman spoke and understood the language. In his decision, the IJ then made specific findings as to the adequacy of the translation,

emphasizing that he had "paid particular attention to the translations" and "observed the respondent testifying and responding to the questions without any doubt at all." As the IJ pointed out, the only time Guaman indicated that he was having difficulty understanding the interpreter "was after he had been caught in [an] inconsistency by the Government lawyer." Once again, the IJ's findings are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Chen, 703 F.3d at 21.

Guaman's situation is certainly unfortunate. He has, in the IJ's words, "thrived in the United States," and his two children are United States citizens.[2] However, we must afford deference to the IJ, who "sees and hears the witnesses at first hand and is in a unique position to evaluate their credibility," especially when the IJ supports his credibility "findings with particularized observations as to demeanor and examples of inconsistencies and implausibilities." Chen, 703 F.3d at 24. Such is the case here. We therefore need not reach the IJ's alternate finding that Guaman failed to establish past persecution on account of a statutorily protected ground. See Dehonzai v. Holder, 650 F.3d 1, 10 (1st Cir. 2011) (noting that a properly supported

---

[2] We assume that Guaman's criminal record makes him an unlikely candidate for prosecutorial discretion under the June 2011 Morton Memorandum. See Gasparian v. Holder, 700 F.3d 611, 614 (1st Cir. 2012).

adverse credibility determination can defeat a petitioner's claims for asylum, withholding of removal, and CAT protection).

The petition for review is <u>denied</u>.