# United States Court of Appeals
## For the First Circuit

No. 12-2294

MOULAYE ABDEL CAMARA,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW FROM AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Timothy J. Nutter on brief for petitioner.
Jason Wisecup, Trial Attorney, Office of Immigration
Litigation, Stuart F. Delery, Acting Assistant Attorney General,
Civil Division, and Carl H. McIntyre, Jr., Assistant Director,
Office of Immigration Litigation, on brief for respondent.

July 26, 2013

**LYNCH, <u>Chief Judge</u>**.  Moulaye Abdel Camara of Senegal has been ordered removed to Guinea and has foregone the opportunity for voluntary departure.  He petitions for review of a September 28, 2012, decision by the Board of Immigration Appeals (BIA), which affirmed the decision of an immigration judge (IJ) denying his application for withholding of removal (WOR) and protection under the Convention Against Torture (CAT).  Camara was found not to have suffered past persecution and had not established the likelihood of any future personal injury to him rising to the level of persecution.

His claim of persecution was based on his future opposition to the possible female genital mutilation (FGM) of his daughters if he took them with him to Guinea.  Camara was also found ineligible for relief on the basis of any prospective harm to his daughters.  CAT protection was denied because Camara had not established the likelihood of torture at the hands of or with the acquiescence of his home government.

Camara makes two arguments in his petition.  First, he argues that the IJ and the BIA erred in finding that it would be reasonable for him to relocate internally, away from his family and home village in Guinea, to avoid any personal injury.  Second, he argues that both erred in failing to consider whether the threat of forced FGM to his daughters, should they return with him, constituted a threat of direct persecution to him in the form of

-2-

emotional harm. The first argument fails because the findings of reasonable relocation that Camara questions were supported by substantial evidence. The second fails because Camara's theory of "direct" persecution of him based on the possible risk to his daughters has been foreclosed by the BIA, in a reasonable interpretation of the statute, and by circuit precedent. We deny his petition.

I.

Camara is a native of Senegal and a citizen of Guinea. He entered the United States on May 1, 1999, as a visitor, with permission to remain for five months. He did not leave. The Department of Homeland Security served Camara with a Notice to Appear almost a decade later, charging that he was removable pursuant to 8 U.S.C. § 1227(a)(1)(B) as an alien who remained in the United States beyond September 30, 1999, without authorization. Camara conceded removability, requesting relief in the form of WOR and protection under the CAT.

A merits hearing was held before an IJ on July 13, 2011. There, Camara testified that, once he was in the United States, he and his wife had three children. Camara's wife lacked legal residence in the United States, and was pursuing cancellation of removal in another proceeding. Their three children, two girls and a boy, were all United States citizens. Camara testified that, despite the children's legal residence in the United States, he

would be forced to take them with him to Guinea if he was removed. He claimed that this would be so even if his wife obtained legal residence in the United States, as well. Camara said no one could provide for the children like him.

Camara testified that, if removed to Guinea, he would be subjected to beatings and voodoo <u>at the hands of his family and other members of his tribe</u>. This would be on account of his opposition to his daughters being subjected to FGM. Camara claimed further that he would be subject to such violence even if his daughters remained in the United States, because he had refused to bring them to Guinea.

Camara denied that internal relocation would do any good, although he had testified that his persecution would come from his family and his tribe. FGM was a nationwide practice[1] that, although illegal, the Guinean government did nothing to prevent. Wherever Camara might relocate within Guinea, the threat to him would be the same, he said. When asked about relocating to Senegal, Camara seemed to concede that his lack of Senegalese citizenship would be no bar. What made that option infeasible, however, was that he "ha[d] nothing there."

The IJ denied Camara's requests for relief. As to WOR, she found that Camara had not been threatened in the past and had

---

[1] State Department reports in the record state that somewhere between 96% and 98.6% of women in Guinea are subjected to FGM.

not established the probability of future persecution on a protected ground. More specifically, she found that Camara had not shown that his United States citizen daughters would be forced to return with him to Guinea if he was removed. Further, she found that any threat posed by his family and fellow tribespeople could be avoided through relocation within Guinea, a course of action that would be reasonable to expect him to follow under the circumstances. As to CAT relief, the IJ found that the hostility Camara feared came from private citizens. Camara had provided no evidence that he would be targeted in any way by a government actor, let alone targeted for persecution.

Camara appealed to the BIA, which dismissed the appeal on September 28, 2012. The Board agreed with the IJ that Camara had not established past persecution. It agreed further that Camara had not established the likelihood of future persecution by his family or by members of his tribe. The Board observed that, although Camara had introduced evidence that FGM was widespread in Guinea, that evidence did not establish a threat of harm rising to the level of persecution to him in particular. In addition, the Board agreed with the IJ that the evidence on the record did not support a finding that relocation within Guinea would be unreasonable.

Finally, the BIA held that, insofar as Camara's claim was predicated upon a fear of his daughters being subjected to FGM, the

Board had already determined in In re A-K-, 24 I. & N. Dec. 275 (BIA 2007), that such a fear is, by itself, not a basis for WOR. As to CAT relief, the Board noted that Camara had not specifically challenged that denial on appeal. And, anyway, it agreed with the IJ that Camara had not established the likelihood of torture by or with the acquiescence of Guinean officials.[2] The Board ordered that Camara be removed.

On October 26, 2012, Camara petitioned this court for review of the BIA's decision.

II.

Where the BIA adopts the IJ's findings, we review the BIA's decision in conjunction with those findings. Romilus v. Ashcroft, 385 F.3d 1, 6 (1st Cir. 2004). We review the agency's findings of fact under the substantial evidence standard. Matovu v. Holder, 577 F.3d 383, 386 (1st Cir. 2009). "Under this deferential standard, we accept these findings so long as they are grounded in reasonable, substantial, and probative evidence on the record considered as a whole," id. (quoting Sharari v. Gonzáles, 407 F.3d 467, 473 (1st Cir. 2005)) (internal quotation marks omitted), granting a petition only "if the record compels a

_____

[2] The IJ granted Camara a 60-day voluntary departure period, subject to the condition that Camara post a $500 bond. Camara failed to post the bond. The BIA did not reinstate Camara's period of voluntary departure in its final order because Camara had not submitted within 30 days of filing his appeal any proof of having posted the $500 voluntary departure bond. See 8 C.F.R. § 1240.26(c)(3)(ii).

-6-

conclusion contrary to that reached by the agency," López Pérez v. Holder, 587 F.3d 456, 460 (1st Cir. 2009).

We review the agency's legal conclusions de novo, but afford "substantial deference to the BIA's interpretations of the underlying statutes and regulations according to administrative law principles." Scatambuli v. Holder, 558 F.3d 53, 58 (1st Cir. 2009); see also Holder v. Martínez Gutiérrez, 132 S. Ct. 2011, 2017 (2012) ("[The BIA's] position prevails if it is a reasonable construction of the statute, whether or not it is the only possible interpretation or even the one a court might think best." (citing Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-844 & n.11 (1984))); INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) ("[J]udicial deference to the Executive Branch is especially appropriate in the immigration context . . . .").

To qualify for WOR, "[t]he burden of proof is on the applicant . . . to establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b); see also 8 U.S.C. § 1231(b)(3)(A). An applicant can satisfy this burden by demonstrating past persecution, which gives rise to a rebuttable presumption of a future threat to the applicant's life or freedom, or by showing that it is "more likely than not" that he or she will suffer future persecution on account of one of the protected

-7-

grounds. 8 C.F.R. § 208.16(b)(1)(I), (b)(2); see also Tay-Chan v. Holder, 699 F.3d 107, 111 (1st Cir. 2012).

Here, substantial evidence supports the determination that Camara faced neither past persecution nor a likelihood of future persecution. Camara argues that, because the practice of FGM within Guinea is "nearly universal," the IJ and in turn the BIA erred in finding that internal relocation had not been shown to be unreasonable.[3] This argument suffers from at least two defects. First, the evidence in the record does not clearly establish that any harm would be inflicted upon the parents who oppose FGM in Guinea, or that it would rise to the level of persecution of those parents. Indeed, the evidence that Camara relies upon here indicates only that "parents who do not have their daughter cut might be considered neglectful." R. Van Rossem & A. Gage, The Effects of Female Genital Mutilation on the Onset of Sexual Activity and Marriage in Guinea, 38 Archive Sexual Behav. 178, 179 (2009) (emphasis added); see also Barsoum v. Holder, 617 F.3d 73, 79 (1st Cir. 2010) ("To show persecution, an alien must show more

---

[3] Camara argues further that the burden is on the Government to establish that relocation would be reasonable, citing In re M-Z-M-R-, 26 I. & N. Dec. 28 (BIA 2012). In that case, however, the applicant had shown past persecution, creating a presumption of risk of future persecution and shifting the burden onto the Government to rebut that presumption by establishing the reasonability of relocation. Id. at 29. By contrast, where, as here, the applicant has not shown past persecution, the burden rests with him or her to establish that relocation would be unreasonable. 8 C.F.R. § 208.13(b)(3)(i).

than 'unpleasantness, harassment, and even basic suffering.'" (quoting <u>Jorgji</u> v. <u>Mukasey</u>, 514 F.3d 53, 57 (1st Cir. 2008))). Second, the argument assumes, without support, that if Camara is removed, his two daughters would be forced to accompany him to Guinea. Camara also claims that, even if his daughters were not to come to Guinea, he would face persecution for failing to present them for FGM. The IJ reasonably disregarded this claim. As the IJ observed, no law would require Camara's United States citizen daughters to leave this country if Camara were removed. Moreover, at the time of his hearing, Camara conceded that his wife's separate application for cancellation of removal was still under consideration. This court requested a supplemental filing from both parties on the matter, and we have been informed that Camara's wife was granted cancellation as well as permanent residence on October 2, 2012. She may thus lawfully remain in the United States.[4]

Camara also argues that the IJ and the BIA erred in failing to consider whether the threat of FGM to his daughters constituted a threat of "direct" persecution[5] to him in the form of

---

[4] On October 24, 2012, Camara's wife filed a petition for her husband to obtain an immigrant visa as an immediate relative (an I-130 petition) under the Immigration and Nationality Act section 204(a), 8 U.S.C. § 1154. That petition is still pending.

[5] In addition, Camara argues that the IJ and the BIA erred in failing to consider whether the (alleged) threat to his daughters constituted a threat of direct <u>torture</u> to him. As both the IJ and the BIA observed, Camara presented no evidence of prospective

psychological injury. Again, this argument suffers from at least two defects. First, it assumes without support that Camara's removal would result in his daughters' accompanying him to Guinea.

Second and more fundamental, it relies on a theory of persecution that has been foreclosed by the BIA and this court. In In re A-K-, a FGM case, the BIA held squarely that "allowing an applicant to obtain asylum or withholding of removal through persecution to his child would require granting relief outside the statutory . . . scheme established by Congress." 24 I. & N. Dec. at 278; see also Negusie v. Holder, 555 U.S. 511, 516 (2009) ("[T]he BIA is entitled to deference in interpreting ambiguous provisions of the [immigration statutory scheme].").

This court has recognized the authority of that holding. See, e.g., Mariko v. Holder, 632 F.3d 1, 8 (1st Cir. 2011) (citing In re A-K- and holding scheme does not permit relief for parent on basis of threat of FGM to child); Kechichian v. Mukasey, 535 F.3d 15, 22 (1st Cir. 2008) (observing that In re A-K- "foreclose[s]"

---

government involvement or acquiescence in the harms that he fears, aside from his bare and uncorroborated claim that "[i]f you go to the police to file a complaint or to seek protection, they won't even, you know, look at you." Camara does nothing to challenge those findings here, and so the CAT claim must fail. See also Warui v. Holder, 577 F.3d 55, 58 (1st Cir. 2009) (expressing skepticism concerning cognizability of claims of "derivative" torture under CAT); In re A-K-, 24 I. & N. Dec. 275, 280 (BIA 2007) ("There is no legal basis for a derivative grant of [CAT] protection where, as here, the respondent has not alleged any past torture, or fear of future torture, to himself.").

any claim by a parent of "psychological harm based solely on a child's potential persecution").

Other circuits agree that, in situations parallel to this, fear that a petitioner's children will be subjected, if they accompany the parent, to FGM is not in itself a basis for immigration relief to the petitioner. See, e.g., Kane v. Holder, 581 F.3d 231, 241-43 (5th Cir. 2009) (denial of WOR); Gumaneh v. Mukasey, 535 F.3d 785, 788-90 (8th Cir. 2008) (denial of WOR); Oforji v. Ashcroft, 354 F.3d 609, 614-18 (7th Cir. 2003) (denial of CAT relief).

Camara invokes Abay v. Ashcroft, 368 F.3d 634 (6th Cir. 2004), as contrary precedent. See id. at 640-42 (affording refugee status to parent based on fear of child being subjected to FGM). Abay preceded In re A-K-, and did not have the benefit of the BIA's reasoning in that case. Indeed, the concurring opinion notes the need to first get guidance from the agency. See id. at 646 (Sutton, J.). Moreover, as this court has noted, Abay "is the 'only federal decision' to have reached such a result . . . and in any event it does not bind this circuit." Kechichian, 535 F.3d at 22 (quoting Niang v. Gonzales, 492 F.3d 505, 512 (4th Cir. 2007)).

Camara argues that In re A-K- dealt only with theories of "derivative" persecution, whereas the persecution that he theorizes is "direct." Not so. In re A-K- distinguished claims of "direct" persecution (cognizable under the statutory scheme) from claims of

-11-

"derivative" persecution (not cognizable). Thus, the BIA explained, in "cases where a person persecutes someone close to an applicant . . . <u>with the intended purpose of causing emotional harm to the applicant</u> . . . the persecution would not be 'derivative,' as the applicant himself would be the target of . . . emotional persecution." <u>In re A-K-</u>, 24 I. & N. Dec. at 278 (emphasis added).[6] Label aside, the risk of persecution Camara alleges is thus <u>derivative</u>, not direct.

The petition is <u>denied</u>.

So ordered.

_____

[6] Camara has not alleged that this is a case in which his daughters are at risk of being persecuted <u>as a means of inflicting psychological harm upon him</u>. Nor could he at this stage, having made no such allegation during the administrative stages of the proceeding. <u>See</u> <u>Kandamar</u> v. <u>Gonzales</u>, 464 F.3d 65, 71 (1st Cir. 2006) (requiring exhaustion of administrative remedies); 8 U.S.C. § 1252(d)(1) (same). Rather, Camara has alleged only that his daughters are at risk of FGM, and that he is in turn at risk of <u>incidental</u> albeit "extreme and grave emotional suffering."

-12-