# United States Court of Appeals
## For the First Circuit

Nos. 07-1667, 07-2439

AKOFA AYAWA BAKUAYA,

Petitioner,

v.

MICHAEL MUKASEY, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,

Torruella and Boudin, Circuit Judges.

Harvey Kaplan, Ilana Etkin Greenstein, Jeremiah Friedman, Maureen O'Sullivan and Kaplan, O'Sullivan & Friedman, LLP on brief for petitioner.
Joseph A. O'Connell, Jamie Dowd, Office of Immigration Litigation, Civil Division, Department of Justice, Jeffrey S. Bucholtz, Acting Assistant Attorney General, Civil Division, and Michelle Latour, Assistant Director, on consolidated brief for respondent.

July 14, 2008

**Per Curiam**.  Petitioner, Akofa Ayawa Bakuaya, a native of Togo, arrived in the United States in 1989 on a student visa.  In 1993, she filed an asylum application--later supplemented by an amended application filed in 1999--claiming that her father, uncle and brother had been killed by Togolese officials on account of their tribal affiliation (membership in the EWE tribe) and political activities (membership in the Union of Forces for Change ("UFC") party); that her mother had been detained and interrogated on one occasion and arrested and tortured on another; and that various of her family members were forced to flee Togo and take refuge in neighboring Ghana.  Two other brothers also fled Togo, eventually obtaining asylum in the United States and England.

After repeated delays, a hearing was held before an Immigration Judge ("IJ") in Boston on January 21, 2000.  During the hearing, confronted with an inconsistency in her asylum materials and in the face of the IJ's skepticism, Bakuaya recanted:  she admitted that her brother had not been killed, and her mother had not been arrested and tortured; in fact her mother was in the United States in July 1994, assisting Bakuaya with the care of her then-infant daughter.  Bakuaya's mother had since voluntarily returned to Togo, where two of Bakuaya's other siblings continued to live.  However, Bakuaya maintained that her father and uncle were killed in 1974 because of their political activities, that her family had been forced to flee to Ghana for brief periods of time,

-2-

and that her husband and two of her brothers--all of whom had fled Togo--were politically active and that she would be targeted upon her return because of her association with them.

In an oral opinion, the IJ noted that Bakuaya had repeatedly lied to immigration officials. Her first immigration lawyer had helped concoct the false story (and had since been disbarred and convicted on charges of immigration fraud), but while Bakuaya had replaced her attorney, she felt she could not abandon her false claims because her brother had adopted the false story in his own successful asylum application.

Despite misgivings about rewarding fraudulent applications, the IJ granted Bakuaya's asylum request. The IJ found that the human rights conditions in Togo were "atrocious," and that Bakuaya had established that certain members of her family had been targeted for their political and tribal affiliations, and that if she returned to Togo she might be targeted as well due to her family connections and her long residence in the United States.

On appeal, the Board of Immigration Appeals ("BIA") reversed. It held that Bakuaya failed to satisfy her burden of proving a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. §§ 1158(b)(1)(A), 1101(a)(42)(A) (2000), both because her testimony--on which her claim largely rested--lacked credibility, and because, even if believed, her

testimony did not establish a well-founded fear of future persecution: she was never personally targeted in Togo, had never been politically active, and several of her immediate family members continued to live in Togo unharmed.

Bakuaya petitioned for review of the BIA decision in this court. In the interim, the BIA remanded the case to the IJ to rule on Bakuaya's request for voluntary departure, and Bakuaya filed a motion to reopen her asylum case with the BIA based on changed country conditions and new information concerning another brother, who she claims was attacked by Togolese soldiers on account of his tribal membership. 8 C.F.R. § 1003.2(c). Bakuaya's request for voluntary departure was denied by the IJ, and the BIA denied her motion to reopen. Her petitions for review of the BIA's denial of her asylum application and her motion to reopen were consolidated in this court.

We review the BIA's denial of Bakuaya's asylum application under the substantial evidence standard, deferring to its findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); Fesseha v. Ashcroft, 333 F.3d 13, 18 (1st Cir. 2003) (internal quotation marks and citations omitted). Bakuaya urges us to defer to the IJ's findings, particularly with respect to its ultimate determination that she was credible, but where the BIA has not adopted the IJ's findings our review is of the BIA's decision, and our deference is

-4-

owed to it. Georcely v. Ashcroft, 375 F.3d 45, 49 (1st Cir. 2004); Martinez v. INS, 970 F.2d 973, 974 (1st Cir. 1992).

The parties focus much of their briefing on the BIA's credibility finding, debating whether the admitted falsehoods in Bakuaya's applications and testimony necessarily taint the entirety of her testimony. Credibility determinations are largely for the fact finder, and in any event even crediting arguendo Bakuaya's un-recanted testimony at the hearing, the BIA's denial of her asylum application would survive deferential review based on its alternative ground, namely, that those facts did not show a well founded fear of persecution.

Thus, the evidence showed that Bakuaya had never herself been targeted in Togo. She was never a member of the UFC or otherwise politically active. The sole basis for her asserted fear of persecution in Togo was her familial and tribal connections. But as the BIA noted, her mother, brother, and sister continued to live in Togo, apparently unharmed. Indeed, her mother voluntarily returned to Togo after spending nearly a year and a half in the United States during the 1990's, her brother was able to live in Togo and travel freely for business, and her sister was able to attend university in Togo.

While two of Bakuaya's brothers fled Togo and obtained asylum abroad, one was apparently granted asylum in the United Kingdom as part of an effort to clear a backlog of asylum

applications there; the other was granted asylum in the United States at least in part based on the same false testimony that Bakuaya presented and later recanted. Even if certain of Bakuaya's politically active family members were targeted for their activities, the fact that several of her immediate family members continued to live in Togo indicates that Bakuaya's familial and tribal associations do not alone give rise to a well-founded fear of persecution. See Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999).

Nor was the BIA's denial of her motion to reopen an abuse of discretion. See Luis v. INS, 196 F.3d 36, 39 (1st Cir. 1999). In support of her motion, Bakuaya submitted State Department country reports showing an increased level of political and sectarian violence in Togo surrounding the president's death in 2005 and the contested elections held in April of that year. Yet the 2006 report shows that violence later abated in large part; and the 2005 report, which evidences some violent suppression of political opposition groups, does not establish that Bakuaya--who is not herself politically active--would likely be targeted in Togo.

In her motion, Bakuaya also claimed that following the denial of her asylum application, she learned that her brother was attacked and beaten by Togolese soldiers and later fled to neighboring Benin. She submitted medical reports indicating he was

attacked by government soldiers.  Bakuaya's own affidavit says that the soldiers asked for his identification card before they attacked him, noted the town he was from, and may have assaulted him because his name and place of residence betray his tribal affiliation.

In denying Bakuaya's motion to reopen, the BIA said tersely that the affidavit did not represent first-hand knowledge by Bakuaya or the doctors as to why the brother was attacked and, given the prior seriously false statements made by Bakuaya, the medical reports were not enough to meet the relevant standard for a motion to reopen--establishing a prima facie case for the relief sought.  INS v. Abudu, 485 U.S. 94, 104 (1988).

If we were deciding the issue de novo, we might well say that the signs pointed to an attack on Bakuaya's brother motived by tribal or political hostility, even though there is no first-hand evidence of motivation nor an affidavit from the brother.   But even if this were so, it would indicate only what we already know from country reports, namely, that a certain amount of random tribal-motivated violence exists in Togo.  There is no indication that Bakuaya's brother was targeted because of his family connections in which she shared.  See Pieterson v. Ashcroft, 364 F.3d 38, 44-45 (1st Cir. 2004).

In any case, the Board was not prepared to assume that the brother had been attacked based on tribal or political associations.  Given Bakuaya's record of false statements and the

unexplained absence of any affidavit from her brother, it was not an abuse of discretion for the BIA to insist on a stronger factual showing as a predicate. "[M]otions to reopen are disfavored in deportation proceedings" because of the "strong interest in bringing litigation to a close promptly." Abudu, 485 U.S. at 107, 108.

Finally, Bakuaya argues that her remaining family members in Togo were only able to live there unharmed because, in the case of her mother, the government was unlikely to target an elderly woman, and that her mother possessed embarrassing information about Togo's political leaders; and in the case of another brother, because he had since joined the ranks of the governing party. [AR 14] But Bakuaya admits she is not and has never been affiliated with any opposition political groups, and therefore has not shown why she is a more likely target of government harassment than her other non-political family members.

The petition for review is denied.