# United States Court of Appeals
## For the First Circuit

No. 07-1584

ASTGHIK KECHICHIAN,

Petitioner,

v.

MICHAEL MUKASEY, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Selya, Senior Circuit Judge,
Howard, Circuit Judge.

Igor Freyman, Mulvey, Sneider & Freyman, PC, Susanna L. Shafer, and Law Office of Susanna L Shafer on brief for petitioner. Kathryn L. Deangelis, Trial Attorney, Jeffrey S. Bucholtz, Acting Assistant Attorney General, Civil Division, and Terri J. Scadron, Assistant Director, U.S. Department of Justice, Office of Immigration Litigation, on brief for respondent.

July 23, 2008

**LYNCH**, **Chief Judge**.  Astghik Kechichian, a native and citizen of Armenia, petitions for review of a final order of removal of the Board of Immigration Appeals ("BIA").  The BIA agreed with the finding of the Immigration Judge ("IJ") that Kechichian is not entitled to withholding of removal because she has not shown that it is more likely than not she would be persecuted were she to return to Armenia.  The BIA declined to address Kechichian's argument that she is a member of a social group of people with mental illness requiring treatment because she had failed to raise that argument before the IJ.  The BIA also refused to remand the case to the IJ on account of a newly produced certificate from the Armenian Embassy stating that Kechichian's son is not an Armenian citizen.

We deny the petition for review.

I.

Kechichian entered the United States on December 17, 1996 with a non-immigrant visitor visa valid through December 16, 1997. On April 9, 2001, she was served with a Notice To Appear, charging that she had remained in the United States beyond December 16, 1997 without authorization.

In pleadings before the IJ on May 9, 2001, Kechichian conceded that she was removable as charged in the Notice To Appear. On February 15, 2005, Kechichian filed an application for asylum,

withholding of removal, and protection under the Convention Against Torture ("CAT").[1]

An affidavit accompanying Kechichian's application stated that her father had fled Armenia in 1991, was currently residing in the United States, and had a pending application for asylum. In Armenia, her father had been a doctor and a writer who challenged and frequently came into conflict with government authorities, as a result of which he was harassed and eventually fired from his job. Kechichian's brother was also a doctor. In 1993, he refused to cover up the beating of an anti-government activist, as a result of which he was beaten and held overnight by the government and fired from his job at a hospital. He found a new position, and in April 1996, he was ordered to inject lethal substances into two members of an opposition party, which he refused to do. He escaped the hospital where he worked and, after learning that the government was looking for him, he fled Armenia in June 1996.

Kechichian further stated that she did not want to return to Armenia because she feared she would be persecuted by the government just as her brother was. She noted that she is also a doctor, and "I know that I would be similarly threatened by the

_____

[1] Kechichian was originally party to joint removal proceedings with her ex-husband, who applied for asylum in 2000, and her son, who was born in 1992. After she and her husband divorced, the proceedings were adjourned so that Kechichian could pursue relief separately. At a hearing before the IJ on June 8, 2005, Kechichian's son's case was consolidated with his father's case.

administration of the hospitals, wh[ich] are government controlled, to follow their instructions." She also said that she fears her son would be persecuted, refused Armenian citizenship, and unable to attend school because his father was not an Armenian citizen.

A hearing was held before the IJ on June 8, 2005. At this hearing, Kechichian testified that she is a native and citizen of Armenia. She was married in 1990. She graduated from medical school in 1992 and is licensed to practice medicine in Armenia, but she has never practiced medicine in Armenia or elsewhere. Her son was born in Armenia but he is not an Armenian citizen because his father was not.

Kechichian testified that she lived in Lebanon from 1992 to 1995 because her husband was a Syrian citizen and his family lived in Lebanon. Kechichian left Lebanon in September or October of 1995 because she was depressed and wanted to see her family in Armenia. She said that she came with her son to the United States in December 1996 in order to visit her father and to seek advice regarding her son's lack of Armenian citizenship.

Kechichian stated that she never practiced medicine because she left Armenia shortly after her marriage and she could not practice medicine in Lebanon without being a Lebanese citizen.

Kechichian testified that she does not want to return to Armenia because she wants to stay with her son and family and because she fears that she could be harmed because of her

relationship to her brother. She also said that if she were to return to Armenia, she does not know how she would support herself because she does not think she could find a job as a physician on account of her brother.

Kechichian further testified that her mother is divorced from her father, continues to live in Armenia, works at a hospital as a physician, and has never been arrested or harmed. She also testified that she has extended family members who live in Armenia and she is unaware of any of them being persecuted.

The record before the IJ also included a psychiatric evaluation of Kechichian conducted by a forensic nurse. This evaluation documents that Kechichian suffered depression while living in Lebanon and has continued to struggle with symptoms since coming to the United States, although she is hesitant to discuss these problems. The evaluation further states that although Kechichian did not suggest anything of the sort, it is possible that "her reluctance to discuss her psychiatric symptoms is consistent with reports that the mentally ill are often shunned by their communities in Armenia." It also notes that Armenian legislation protecting the rights of the mentally ill was "only recently passed in June 2004" and that the "resources available in Armenia to treat mental illness are lacking" and there is "significant social stigma attached to needing such care."

In an oral decision, the IJ found that Kechichian had not met her burden of establishing entitlement to withholding of removal because she had not established a "nexus" between her brother's and father's situations and her own.  The IJ also found that Kechichian had not demonstrated eligibility for CAT relief, and that even if she were statutorily eligible for asylum -- a question he did not decide -- she would not be able to make the required showing that a reasonable person in her position would have a well-founded fear of future persecution.  The IJ granted Kechichian voluntary departure.

Kechichian appealed the IJ's decision to the BIA.  She included with her appeal a certification from the Armenian Embassy that her son is not considered to be an Armenian citizen, and she requested that the BIA remand the case to the IJ to consider this new evidence because her "fear of return to Armenia rests in part upon her fear for her . . . son's persecution on account of his nationality."  She also argued that she is a member of a particular social group of people with mental illness requiring treatment and that she fears persecution on the basis of her membership in this group.  She asserted that her psychiatric evaluation provided the basis for this claim and that the IJ erred by not considering that she might face persecution on the basis of her mental illness.[2]

---

[2]    Kechichian did not raise her CAT claim before the BIA, and we therefore do not address it further.  Sela v. Mukasey, 520 F.3d 44, 47 (1st Cir. 2008).

-6-

On March 13, 2007, the BIA issued its own opinion and dismissed Kechichian's appeal. It held that she failed to demonstrate that she is entitled to withholding of removal because (1) unlike her brother, she is not a member of a social group of physicians unwilling to participate in government corruption because she has never actually practiced medicine, and (2) she has not shown that she is more likely than not to be harmed on account of her relationship to her brother because she has not been persecuted on that basis in the past and her mother and extended family have remained in Armenia without incident. The BIA declined to address Kechichian's argument that she is a member of a particular social group of people with mental illness requiring treatment because she had failed to raise this as an issue before the IJ. Finally, the BIA declined to remand the case to the IJ based on the embassy certificate because even if Kechichian's son is not an Armenian citizen and even if she fears that he might be harmed because of his lack of citizenship, she had not demonstrated how this would entitle her to withholding of removal. Kechichian was again granted voluntary departure.

## II.

Before us, Kechichian challenges (1) the BIA's conclusion that she was not entitled to withholding of removal on account of both her membership in a social group of physicians who refuse to participate in government corruption and her membership in a

persecuted family; (2) the BIA's refusal to consider her mental health status as a part of her claim; and (3) the BIA's refusal to remand the case to the IJ to consider the newly introduced evidence. She also argues that her due process rights were violated by the IJ's and BIA's failure to consider her mental health argument.

A.     Withholding of Removal

We review the BIA's factual findings under the deferential substantial evidence standard. We accept these findings unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also, e.g., Chikkeur v. Mukasey, 514 F.3d 1381, 1382-83 (1st Cir. 2008); Ferdinandus v. Gonzales, 504 F.3d 61, 63 (1st Cir. 2007). This includes determinations regarding withholding of removal. Sharari v. Gonzales, 407 F.3d 467, 473 (1st Cir. 2005).

The provision of the Immigration and Nationality Act concerning withholding of removal provides that an alien must show "that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). A social group consists of persons "all of whom share a common, immutable characteristic." Silva v. Ashcroft, 394 F.3d 1, 5 (1st Cir. 2005). Such claims are usually based on gender, kinship units, or family membership. Id.

The burden is on the applicant to establish that she would be threatened on one of the five statutory grounds. 8 C.F.R. § 208.16(b). An applicant can make this showing by demonstrating past persecution, which gives rise to a rebuttable presumption of future persecution, or by showing that it is "more likely than not" that she will be persecuted in the future on one of the statutory grounds. Id. § 208.16(b)(1), (b)(2). See Sela v. Mukasey, 520 F.3d 44, 46 (1st Cir. 2008). Kechichian concedes that she has not suffered past persecution; rather, her claim is based on the possibility of future persecution.

The BIA found that Kechichian was not a member of a group of physicians unwilling to participate in government corruption because she was never actually a practicing physician. This finding is supported by substantial evidence. Even assuming that a group of physicians opposing government practices would qualify as a social group, see Silva, 394 F.3d at 5-6, a question that none of the parties has addressed, Kechichian has provided no evidence that she is a member of such a group. She has established that she graduated from medical school and is licensed as a doctor in Armenia. However, at no time has she practiced medicine in Armenia or anywhere else.

The BIA also found that Kechichian had failed to prove that it is more likely than not that she will be harmed because of her relationship to her brother. This determination is similarly

supported by substantial evidence. Kechichian's mother, a physician who works in a hospital, has remained in Armenia without incident, as have members of her extended family. See Bakuaya v. Mukasey, Nos. 07-1667, 07-2439, ___ F.3d ___, 2008 WL 2719887, at *2 (1st Cir. July 14, 2008); see also, e.g., Sela, 520 F.3d at 47; Ferdinandus, 504 F.3d at 63. Kechichian does not deny the continuing presence of her family in Armenia; rather, she suggests that because her parents are divorced, her situation might differ from her mother's. Nothing compelled the BIA to conclude this was a significant distinction. Her mother is closely related to her brother, yet she has never been harmed. Moreover, Kechichian's claim is weakened by the fact that she was present in Armenia without incident between June 1996, when her brother fled the country because the government was supposedly in hot pursuit of him, and December 1996, when she left Armenia for other reasons.[3]

---

[3] Kechichian's original application was for asylum as well as withholding of removal. The IJ focused on withholding of removal and noted that even if she were statutorily eligible for asylum, a question he did not decide, Kechichian could not make the required showing. The BIA did not address the asylum claim at all. In her briefs to both the BIA and this court, Kechichian does not refer to asylum per se but couches her arguments in terms of "well-founded fear of future persecution," which is the standard for demonstrating eligibility for asylum. See 8 U.S.C. § 1101(a)(42)(A).

Even if Kechichian's claim for asylum were properly before us and not waived, a question we need not decide, it would fail. To demonstrate eligibility for asylum based on future persecution, an applicant must have a "well-founded" fear of persecution, meaning a fear that is both "subjectively genuine" and "objectively reasonable." Santosa v. Mukasey, 528 F.3d 88, 93 (1st Cir. 2008). Kechichian does not come close to making such a

B.          Mental Illness Claim

          The BIA declined to address Kechichian's mental illness
argument because "[w]e are an appellate body, and we will not
address arguments raised for the first time on appeal."  "The
agency's responses to abstract legal questions and its application
of the law are matters that invite de novo review, with deference
accorded to its reasonable interpretation of statutes and
regulations" within its purview.  Segran v. Mukasey, 511 F.3d 1, 5
(1st Cir. 2007).

          Kechichian did not ever suggest that there was a mental
illness aspect to her claim in her application for relief, her
affidavit, or her testimony before the IJ.  Her only basis for
arguing that this claim was presented to the IJ is the reference to
Armenia's treatment of the mentally ill in the psychiatric
evaluation prepared by a forensic nurse and included in the record
before the IJ.  This evaluation focused on the nurse's observations
of Kechichian and noted in passing the possibility of
discrimination against the mentally ill and fewer treatment options
in Armenia.  The evaluation explicitly stated that it was not
Kechichian herself who raised this issue: "While not specifically
identified by [Kechichian], her reluctance to discuss her
psychiatric symptoms is consistent with reports that the mentally
ill are often shunned by their communities in Armenia."  It was not

showing.

-11-

error for the BIA to determine that the argument was waived.  See Estrada-Canales v. Gonzales, 437 F.3d 208, 220 (1st Cir. 2006).

Kechichian also asserts that the IJ's failure to consider the mental illness aspect of her claim violated her right to due process.  We cannot consider this argument because she failed to present it to the BIA and it does not qualify for one of the few narrow exceptions to the exhaustion requirement.  Kandamar v. Gonzales, 464 F.3d 65, 71 (1st Cir. 2006).

Kechichian further claims that the BIA's refusal to consider her mental illness claim violated her right to due process at the BIA level.  This argument clearly fails.  "An alien has no constitutional right to any administrative appeal at all." Albathani v. INS, 318 F.3d 365, 376 (1st Cir. 2003).

C.      New Evidence and Refusal To Remand

The BIA treated Kechichian's request for a remand as a motion to reopen, which must state "new facts that will be proven at a hearing to be held if the motion is granted."  8 C.F.R. § 1003.2(c)(1); see also Zeru v. Gonzales, 503 F.3d 59, 71 (1st Cir. 2007).  A motion to reopen must be denied unless the new evidence "establishes a prima facie case for the underlying substantive relief."  Chikkeur, 514 F.3d at 1383.

We review the denial of a motion to reopen for abuse of discretion.  Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007). "This means, in effect, that such a decision will stand unless the

complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Id.

The BIA refused to reopen Kechichian's case because it held that even if her son were potentially subject to persecution in Armenia, that would not entitle her to relief. This circuit has not considered a parent's claim of psychological harm based solely on a child's potential persecution, but the BIA has foreclosed such claims. In re A- K-, 24 I. & N. Dec. 275, 278 (B.I.A. 2007) ("[A]llowing an applicant to obtain asylum or withholding of removal through persecution to his child would require granting relief outside the statutory . . . scheme established by Congress."); see also Niang v. Gonzales, 492 F.3d 505, 513 (4th Cir. 2007) (refusing to recognize a claim based on a child's potential persecution). Kechichian argues that the Sixth Circuit reached a different conclusion in a case involving a mother who feared her daughter would be subject to genital mutilation if they were forced to return to Ethiopia. Abay v. Ashcroft, 368 F.3d 634, 636 (6th Cir. 2004). However, that is the "only federal decision" to have reached such a result, Niang, 492 F.3d at 512, it is factually distinguishable from Kechichian's case, and in any event

it does not bind this circuit.  There was no error of law and no abuse of discretion.[4]

The petition for review is denied.

---

[4]    To the extent that Kechichian might be making a derivative claim based on her son's potential persecution, that claim is clearly foreclosed by statute.  See Niang, 492 F.3d 512-13; In re A- K-, 24 I. & N. Dec. 275 at 279 (noting that the statute "does not permit derivative withholding of removal under any circumstances").