FILED

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   NC-15-1315-SKuB |
| ) | |
| STANLEY HERBERT BRODY, ) | Bk. No.   13-11721 |
| ) | |
| Debtor. ) | Adv. No.   14-01039 |
| _____ ) | |
| LYNN H. CHOU, ) | |
| ) | |
| Appellant, ) | **MEMORANDUM**[1] |
| ) | |
| v. ) | |
| ) | |
| STANLEY HERBERT BRODY, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on January 19, 2017
at San Francisco, California

Filed - March 15, 2017

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Bankruptcy Judge, Presiding
_____

Appearances:   Mark T. Young of Donahoe & Young LLP argued for
appellant Lynn H. Chou; Michele M. Poteracke
argued for appellee Stanley Herbert Brody.
_____

Before: SPRAKER,[2] KURTZ and BRAND, Bankruptcy Judges

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[2] Hon. Gary A. Spraker, Chief Bankruptcy Judge for the District of Alaska, sitting by designation.

**INTRODUCTION**[3]

Appellant Lynn Chou appeals the bankruptcy court's decision after trial that she failed to prove her claims under 11 U.S.C. § 523(a)(2) and (a)(6) to except from discharge a prepetition judgment against appellee/debtor Stanley Brody for unpaid real estate commissions. She contends that the court improperly credited illogical and implausible reasons offered by the debtor for the nonpayment of her commissions to find that the debtor lacked an intent to defraud for purposes of § 523(a)(2). Additionally, she contends the debtor's failure to pay the commissions constitutes tortious conduct under California law sufficient to establish a willful and malicious injury under § 523(a)(6). Ms. Chou further argues that the state court judgment precludes consideration of the debtor's testimony and arguments presented at trial. Because the bankruptcy court's findings are neither illogical, nor implausible, and are supported by facts in the record, we AFFIRM that court's decision.

## I.   FACTUAL BACKGROUND

### A.   Ms. Chou's Employment with Multisource.

Multisource was a mortgage brokerage firm operated by Saul Brody as the broker.[4] Stanley Brody was Multisource's branch office manager, responsible for its day to day operations.

---

[3] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[4] The record does not reveal whether Multisource was a business entity or sole proprietorship, nor does it explain what has become of the business.

In the summer of 1992, Multisource placed a small written advertisement in a local Chinese newspaper soliciting a salesperson with the promise of paying 100% of commissions earned on loans closed. Chou saw the ad and telephoned Multisource for more information. At the time, Chou was working for another mortgage broker, All Star Investments.[5] Chou met Mr. Brody to discuss the ad, and employment with Multisource, around June 10, 1992. She testified that Brody confirmed she could retain 100% of her commissions, subject to a monthly payment of $650.00 as a desk fee. No written contract was presented at that time.

At trial, Brody did not directly contradict Chou's recollection of their first meeting, or that Multisource agreed to pay her 100% commissions. Rather, he explained that agent compensation at Multisource was based upon 100% of the commissions net of expenses and costs rather than the gross commissions generated. He also testified that a monthly fee of $650.00 would be deducted from Chou's net commissions as the minimum desk fee. Further, if she closed more than three loans in any month she would be charged an additional $250.00 fee for every loan closed after the third loan.

Chou began to work for Multisource sometime in June 1992. Her exact starting date is unclear, but Brody presented Chou with a pre-printed form entitled "Broker Salesperson Contract"

---

[5] Chou testified that, overall, she had four to five years of experience in the mortgage business, but it is not clear how many years of experience she had at the time she approached Multisource.

3

dated June 28, 1992 ("Salesperson Contract"). The first page of the contract, marked as page 8, provided:

> Whereas, Salesperson is now engaged in business as a real estate licensee, duly licensed by the State of California.
>
> . . . .
>
> When Salesperson shall have performed any work hereunder whereby any commission shall be earned and when such commission have [sic] been collected, Salesperson shall be entitled to a share of such commission as determined by the current commission schedule set forth Broker's written policy, except as may otherwise be agreed in writing by Broker and Salesperson before completion of any parties transaction. See Addendum A & B.
>
> . . . .
>
> 7. In compliance with Section 10138 of the California Business and Professions Code, all commissions will be received by Broker; S[sic] person's share of such commissions, however, shall be payable to Salesperson immediately upon collection or as soon thereafter as practica [sic]

Brody explained that he obtained both the Salesperson Contract and its Addendum A from the California Department of Real Estate. Addendum A, which is specific to mortgage brokers, was attached to the contract to detail the calculation of the commission payable to Chou. It provides that "[a]ny money not collected from the borrower but which is identified as a cost of processing (i.e.: courier services, Express mail, lender statements, long distance calls, etc.) for each transaction shall be subtracted from the gross commission." From this "Adjusted Gross Commission," Addendum A further provided:

> Salesperson shall pay broker a minimum rental for office space equal to $650 per month, for the first THREE (3) TRANSACTIONS

4

> (BASE) FUNDED, PLUS $250 PER TRANSACTION
> FUNDED ABOVE THE BASE. Salesperson shall
> receive 100% of the net commissions after
> rental deductions.

An Addendum B was also attached to the Salesperson Contract. This addendum clarified that Chou's date of termination from All Star Investments was June 28, 1992. It also required her to specifically identify all loans released to Multisource by All Star Investments, and to certify that she had not originated, processed, or caused any other lender to approve and fund any loan application.

Chou viewed the additional $250.00 fee per loan above the base as departing from the newspaper ad and the terms initially discussed with Brody. She testified that she did not sign the Salesperson Contract because she was not comfortable with it. Instead, she asked Brody to explain the legal terms used in the contract, but stated that he never got back to her. After receiving the Salesperson Contract, she became concerned that she was bringing loans into Multisource without any written agreement. So, Chou hand wrote a one page summary of her understanding of the terms of her employment and compensation, and presented it to Brody. Both she and Brody signed this document. It reads:

> This is the confirmation to verify our
> conversation for commission split between
> Multisource and Lynn H. Chou (real estate
> agent). Multisource will charge Lynn H.
> Chou $650.00 for month of July if Lynn H.
> Chou can submit at least 3 loan packages to
> Multisource.

The document is undated.

Brody testified that the handwritten document memorialized

5

their understanding, but he did not consider it to be a contract, in part, because it was not dated. Instead, Multisource still required her to sign the Salesperson Contract. He was also adamant that the commission payable to Chou remained net of expenses or deductions.

Multisource nonetheless permitted Chou to close loans under its broker license. The parties always anticipated that Chou would bring three or four loans with her from All Star Investments that would close quickly after she changed brokers. Although these loans closed, Multisource did not pay Chou any commissions from them. Chou testified that she closed a number of additional loans in July 1992, also without receiving compensation.

Brody testified that he repeatedly asked Chou to sign the Salesperson Contract and to provide him with her real estate license. Despite these requests, he never received either of them. The record is unclear as to why Chou never provided her license to Multisource,[6] but she explained that she never received answers to her questions regarding the Salesperson Contract.

Despite its concerns, Multisource paid Chou $4,102.00 on August 17, 1992. This represented her net commission for one loan, less the $650 desk fee for August 1992. When asked why Multisource paid Chou without having received either a signed Salesperson Contract or her real estate license, Brody answered

---

[6] Chou was never asked whether she provided her license to Brody during her examination.

that he discovered Chou had improperly personally reimbursed a client for closing costs on that loan. This was significant because only brokers were authorized to reimburse clients for closing costs. He discussed the matter with Chou and was convinced that she understood why it was improper to directly reimburse clients' closing costs. She also agreed not to do so in the future. Based on their discussion, Brody was willing to "stick his neck out" to pay her this commission, which he viewed as remedying the problem.

Around this time, Brody had also become concerned with other aspects of Chou's performance. He generally objected to Chou's working outside of Multisource's offices, and her personal retention of loan files. He explained that this conduct impaired Multisource's ability to supervise her work or verify disbursements at loan closings. In particular, the disbursement information was needed to calculate her net commissions. Chou testified, however, that she regularly worked in Multisource's office.

On October 10, 1992, Brody terminated Chou's employment with Multisource. Chou testified that she was terminated without reason. Brody stated that she was terminated after he discovered her "rummaging through his office." After her termination, Brody discovered a number of irregularities in her loan files that frustrated Multisource's ability to calculate the amount of the commissions owed to Chou.

**B.    The State Court Litigation.**

On April 12, 1994, Chou filed a complaint in the California Superior Court, San Mateo County, against Multisource and Brody

7

to recover her commissions. Originally, she pled causes of action for breach of contract and fraud, specifically, for the tort of making a promise without an intention to perform. She amended her complaint shortly before trial to include a separate claim to recover $7,800.00 in monies advanced "to cover the fees incurred by defendants' clients pursuant to 'no-points' loans." In both the original and amended complaint, Chou sought exemplary damages for the defendants' fraud.

The case proceeded to a five day bench trial. At the conclusion of trial, the superior court ruled that Chou was entitled to recover commissions, but also awarded credits or deductions against those commissions.[7] It also found that Chou was no longer an employee of defendant as of October 10th, by which date 13 cases had been substantially completed while the remainder of cases "had substantial noncompletion of information." The court further found that the parties had "continued to function under the basis of the original written agreement as that agreement had never been replaced by another agreement."[8] The court awarded Chou commissions in the amount of $44,892.43 for the 13 completed cases less $6,733.86 in

[7] Although both Multisource and Brody were named as defendants in the state court action, the court generically referred to only a single, unnamed defendant in both its oral ruling and its subsequent Judgment dated October 1, 1997 ("Judgment"). Brody does not deny his individual liability under the Judgment.

[8] The state court does not identify the "original contract," although Chou's handwritten document is the only one that was ever signed. Nor does that court explain or discuss the deductions credited against the commissions, other than listing them as "processing fees" for rechecking or completing the files.

8

processing fees for rechecking files; commissions of $29,317.94 for the noncompleted cases less $10,261.28 in processing fees for completing files; and awarded defendant credits in the amount of $13,800.00 for rebates paid by the defendant, as well as $1,950.00 for desk fees at $650 per month for August-October 1992. In total, the court calculated the net commissions payable to Chou to be $41,465.23. The court also awarded costs to plaintiff, but did not award interest on her claim.

On October 1, 1997, the superior court entered its Judgment, but revised the gross amount of the commissions awarded to Chou to $55,266.23. The court also reduced defendant's credits or deductions to $18,945.14, which equals the processing and desk fees previously awarded, but excludes the award of rebates. Consistent with its oral findings, the court awarded Chou costs, but no interest. The court also memorialized its findings that: (1) Chou was no longer an employee of defendant as of October 10, 1992, (2) 13 cases had been substantially completed, and the balance "had substantial noncompletion of information," and (3) the parties continued to function under the original written agreement.

Although Chou originally asserted a fraud/tort claim against Brody for a promise without intent to perform, there is no evidence that this claim was presented at trial. The minutes of the court's oral ruling are devoid of any reference to the tort claim or the request for exemplary damages. Similarly, the Judgment fails to mention either the tort claim or the request for exemplary damages. Further, neither the minutes of the oral ruling, nor the Judgment, address Chou's amended claim for

9

monies advanced to pay client costs. Rather, the Judgment merely states that she was "entitled to recover commissions totaling $55,266.23," and provides for credits against those commissions.

Chou renewed her Judgment on September 14, 2007, in the total amount of $127,588.46. She has not been paid any amount owed under the Judgment.

**C.    Bankruptcy and Trial on the Nondischargeability Claims.**

Brody filed a chapter 13 petition on September 6, 2013. He converted his bankruptcy to chapter 7 on November 11, 2013. Chou timely filed her complaint objecting to the dischargeability of the Judgment. She seeks relief on two grounds. She asserts Brody falsely represented his intention to pay her commissions, rendering the debt nondischargeable under § 523(a)(2)(A), and that the nonpayment of commissions willfully and maliciously injured her under § 523(a)(6).

The bankruptcy court conducted a trial on Chou's nondischargeability claims on August 20, 2015. Chou and Brody were the only witnesses. After argument, the court took the matter under submission.

That afternoon, the bankruptcy court entered written findings of facts and conclusions of law under Fed. R. Civ. P. 52(a), made applicable to adversary proceedings by Fed. R. Bankr. P. 7052.[9] It ruled in Brody's favor on both claims. As

_____

[9] At the conclusion of Chou's case, Brody's counsel nominally made a motion for directed verdict. A motion for
                                                              (continued...)

10

to the fraud claim under § 523(a)(2), the court concluded that Chou's "argument that Brody caused Multisource's ad to be placed in order to lure salespeople to work for Multisource with no intent to compensation [sic] them was so lacking in evidence as to be preposterous." It specifically focused upon fraudulent intent, and found that "Chou was hired in good faith, and her failure to receive her commissions was the result of [Brody's] good faith belief that she could not be compensated without a signed contract and delivery of her license." The court further concluded that Brody's reasonable, good faith beliefs negated any subjective intent to harm Chou, which precluded any finding of willful and malicious injury under § 523(a)(6).

The bankruptcy court entered its Judgment dismissing Chou's claims, with prejudice, on August 31, 2015. Chou timely appealed this decision.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C.

---

[9](...continued) directed verdict is treated as a motion for judgment as a matter of law under Fed. R. Civ. P. 50, and applies only in jury trials. Fed. R. Bankr. P. 9015(c); Fed. R. Civ. P. 50(a). In bench trials, such a motion is treated as one for judgment on partial findings under Fed. R. Civ. P. 52(c), made applicable to adversary proceedings by Fed. R. Bankr. P. 7052. Here, the bankruptcy court entered its decision under Rule 52(a), rather than (c). The difference between the two subsections is immaterial for purposes of this appeal, however. Even under Rule 52(c), the bankruptcy court was entitled to weigh the evidence presented and the credibility of witnesses. Kuan v. Lund (In re Lund), 202 B.R. 127, 130 (9th Cir. BAP 1996); 27A Fed.Proc., L.Ed. § 62:701 (March 2017). Moreover, the court was still obligated to make "findings of fact and conclusions of law as required by Rule 52(a)." Fed. R. Civ. P. 52(c).

11

§§ 1334 and 157(b)(2)(I).  This court has jurisdiction under 28 U.S.C. § 158.

### III.  ISSUES

Whether the bankruptcy court erred when it determined that Chou did not establish her § 523(a)(2)(A) and (a)(6) claims.

### IV.  STANDARDS OF REVIEW

Whether a claim is excepted from discharge under § 523(a) presents mixed issues of law and fact which we review de novo. Carillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002); Diamond v. Kolcum (In re Diamond), 285 F.3d 822, 826 (9th Cir. 2002).  "De novo means review is independent, with no deference given to the trial court's conclusion."  Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 818 (9th Cir. BAP 2010).

We review the bankruptcy court's findings of fact for clear error.  Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011).  "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.'"  Fisher v. Tucson Unified School Dist., 652 F.3d 1131, 1135 (9th Cir. 2011)(citation omitted).  There is no clear error unless the findings of fact are "'(1) illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'"  United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc)(quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 577 (1985)).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly

12

erroneous." Anderson, 470 U.S. at 574; see also Lewis v. Ayers, 681 F.3d 992, 999 (9th Cir. 2012).

The bankruptcy court's credibility determinations are entitled to special deference. Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006)(citation omitted). Findings based upon determinations of credibility are given greater deference "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Anderson, 470 U.S. at 574.

## V. DISCUSSION

In a nondischargeability action under § 523(a), the creditor has the burden of proving all the elements of its claim by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Exceptions to discharge are strictly construed against an objecting creditor and in favor of the debtor to effectuate the fresh start policies under the Bankruptcy Code. Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992).

**A. The Court Did Not Err by Dismissing Appellant's § 523(a)(2) Claim.**

Debts for money or property are excepted from discharge to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To sustain a claim of non-dischargeability under § 523(a)(2)(A), a creditor must prove five elements:

(1) the debtor made . . . representations;

(2) that at the time he knew they were

13

false;

    (3) that he made them with the intention and purpose of deceiving the creditor;

    (4) that the creditor relied on such representations; [and]

    (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010) (quoting Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir.1996)).

Chou's Judgment establishes a debt based in contract. Mere breaches of contract, without more, do not support nondischargeability under § 523(a)(2). Businger v. Storer (In re Storer), 380 B.R. 223, 235 (Bankr. D. Mont. 2007); see also Ubriaco v. Martino (In re Martino), 429 B.R. 66, 72 (Bankr. E.D.N.Y. 2010)(collecting cases). To support her claim under § 523(a)(2)(A), Chou was required to show that Multisource, acting through Brody, had no intent to perform. Cripe v. Mathis (In re Mathis), 360 B.R. 662, 666 (Bankr. C.D. Ill. 2006); Brann v. Oxford (In re Oxford), 440 B.R. 772, 777 (Bankr. W.D. Ky. 2010); Duncan v. Bucciarelli (In re Bucciarelli), 429 B.R. 372, 375 (Bankr. N.D. Ga. 2010); Mozeika v. Townsley (In re Townsley), 195 B.R. 54, 61 (Bankr. E.D. Tex. 1996). Moreover, the debtor's lack of intent to perform must exist at the time he entered the contract. Paik v. Lee (In re Lee), 536 B.R. 848, 855 (Bankr. N.D. Cal. 2015)(citing New Falls Corp. v. Boyajian (In re Boyajian), 367 B.R. 138, 147 (9th Cir. BAP 2007)).

Although the bankruptcy court stated that Chou failed to

14

establish any of the elements of her claim under § 523(a)(2), its analysis was primarily directed to whether Brody acted with fraudulent intent. Chou's appeal is similarly focused. She acknowledges that Brody testified at length regarding his understanding that a broker could not pay a salesperson absent both a signed contract and possession of that person's original real estate license. But, she argues that his explanation was not credible; so much so that when properly viewed it actually proves his fraudulent intent. As an initial matter, Chou argues that the state court Judgment precludes Brody from challenging the nondischargeability of the debt. Alternatively, she contends that Brody's reasons for nonpayment of her commissions are illogical and implausible because they are legally incorrect.

### 1. The Judgment Did Not Preclude Brody from Presenting Evidence of his Intent.

It is well settled that "[p]rinciples of collateral estoppel apply to proceedings seeking exceptions from discharge brought under 11 U.S.C. § 523(a)."[10] Baldwin v. Kilpatrick (In re Baldwin), 249 F.3d 912, 917 (9th Cir. 2001)(citing Grogan, 498 U.S. at 284 n.11)). If a state court judgment determines the elements necessary to establish an exception to the debtor's discharge, the debtor is precluded from contesting the basis for denial of the dischargeability of that debt.

---

[10] Collateral estoppel is now referred to as "issue preclusion." Yaikian v. Yakian (In re Yaikian), 508 B.R. 175, 182 (Bankr. S.D. Cal. 2014); Lucido v. Superior Court, 51 Cal.3d 335, 341 n.3 (1990).

15

*In re Diamond*, 285 F.3d at 826.

The preclusive effect of a state court judgment is determined by application of that state's laws. *Id.*; *In re Baldwin*, 249 F.3d at 917. California law, therefore, governs the preclusive effect of the Judgment. For collateral estoppel to apply, California requires that the issue sought to be precluded be identical to that previously decided, that the issue was actually litigated and necessarily decided on the merits, and that the party to be precluded was the same as, or in privity with, the party in the prior litigation. *Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990). As a final requirement, California courts must determine "whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy." *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824-25 (B.A.P. 9th Cir. 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007)(citing *Lucido*, 51 Cal.3d at 341-43).

As the party seeking preclusion, Chou "must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996). Any reasonable doubt as to what was decided for purposes of issue preclusion is resolved against the moving party. *Id.*

Chou contends that the bankruptcy court erred by considering Brody's explanation for Multisource's nonpayment of the commissions based on his understanding of California law governing a real estate broker's employment of salespersons.

16

She maintains the state court rejected Brody's defenses because it entered the Judgment notwithstanding her failure to sign the Salesperson Contract or provide her original realtor's license.

There is nothing in the record to establish that the state court considered, much less decided, why Multisource failed to pay Chou's commissions. Originally, Chou asserted a separate tort claim that Brody hired her without any intent to pay her the commissions she generated. Neither the Judgment, nor anything in the record, suggests that she actually litigated this claim at trial in the state court. Indeed, Chou now acknowledges that the state court made no findings of fraud in the 1997 trial.

Chou has failed to establish that the parties actually litigated, or the state court necessarily decided, the issue of Brody's intent as to the nonpayment of Chou's commissions. Therefore, collateral estoppel does not preclude Brody from litigating his subjective beliefs and intent before the bankruptcy court on Chou's nondischargeability claims.

**2. The Bankruptcy Court Did Not Err in Finding that Brody Lacked the Fraudulent Intent Required to Except a Debt from Discharge under § 523(a)(2)(A).**

Because intent to deceive is rarely subject to direct evidence, creditors must generally rely upon circumstantial evidence to establish fraudulent intent. Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1090 (9th Cir. 1996). For this reason, courts may draw inferences from the debtor's actions and the surrounding circumstances. Devers v. Bank of Sheridan, Montana (In re Devers), 759 F.2d 751, 754

17

(9th Cir. 1985); In re Lee, 536 B.R. at 855.

Chou points to the fact that she was not paid her commissions as proof of Brody's fraudulent intent. She cites Sharma v. Salcido, (In re Sharma), 2013 WL 1987351 (9th Cir. BAP May 14, 2013), in support of the proposition that "intent to deceive may be inferred if a debtor takes no steps to perform under a contract." Id. at *10. In In re Sharma, the debtor promised an investor a 20% return on monies invested with him for the purpose of refurbishing and selling houses. Although some interest was paid, the debtor never worked on the houses to be sold, and let them go to waste. From this, the BAP held that the bankruptcy court did not err in its determination that the debt was nondischargeable under § 523(a)(2)(A), concluding that "[a]lthough there may be other permissible views of the evidence, [the debtor] has put forth none that render this view clearly erroneous." Id. at *13 (citing Anderson, 470 U.S. at 574).

In re Sharma demonstrates Chou's burden to establish clear error. While nonpayment of her commission could support an inference of fraudulent intent, it does not compel such a conclusion. This determination was for the trial court to make based upon Brody's testimony and its measure of his credibility. It found his explanation to be credible. To prevail on appeal, Chou must point to evidence that contradicts Brody's testimony, or suggests that "the story itself [is] so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." Anderson, 470 U.S. at 575.

Chou contends that Brody's explanations are a sham,

18

unsupported by California law.  She cites Grant v. Marinell, 112 Cal.App.3d 617, 619 (1980), to show that California's statute of frauds does not bar oral contracts to share commissions between brokers, or between brokers and salespersons.  Grant establishes that a salesperson may recover commissions under an oral contract with a broker.  Grant does not, however, negate the licensing requirements imposed by the California Code of Regulations, which mandate that a real estate broker "shall have a written agreement with each of his salesmen."[11]  Cal. Code Regs. tit. 10, § 2726.  The regulations further require that the written contract be dated and signed by the parties, and cover the "material aspects of the relationship between the parties, including supervision of licensed activities, duties and compensation."[12]  Id.

---

[11] One treatise has reconciled the requirement for a written agreement between brokers and salespersons with the right to recover on oral agreements as follows:

> The regulations of the Real Estate
> Commissioner require that the salesperson's
> employment agreement must be in writing, but
> the Real Estate Law does not specifically
> provide that an oral agreement between a
> broker and salesperson is unenforceable.
> Therefore, while the absence of the required
> written agreement may subject the broker to
> discipline by the Real Estate Commissioner,
> the oral agreement for compensation remains
> enforceable between the parties.

Miller and Starr, 2 Cal. Real Estate § 5:15 (4th ed. Dec. 2016 update).

[12] Similarly, California's Labor Code § 2751(a) requires employers who use employees compensated through commissions to
(continued...)

19

Although Brody signed Chou's handwritten document, it is undated and fails to cover the material aspects of her employment by Multisource.  California's regulatory requirements support Brody's understanding regarding the need for a signed Salesperson Agreement as well as Addendum A.  They also explain his testimony as to why he believed the lack of a date on Chou's handwritten document was significant.

As for Brody's understanding that a salesperson must provide her broker with an original license, he specifically referenced "§ 10160" as the basis for this requirement during his testimony at trial.  This section provides:

> The real estate salesman's license shall remain in the possession of the licensed real estate broker employer until canceled or until the salesman leaves the employ of the broker, and the broker shall make his license and the licenses of his salesman available for inspection by the commissioner or his designated representative.

California Bus. & Prof. Code § 10160.  It is also "unlawful" for a licensed real estate broker to employ or compensate any unlicensed brokers or salespersons.  Cal. Bus. & Prof. Code § 10137.  Both statutes provide for the suspension or revocation of the real estate license for violations.  Cal. Bus. & Prof. Code §§ 10160 and 10137.  California's regulatory scheme governing real estate agents supports Brody's understanding that real estate brokers must verify and hold the license of a salesperson before compensating that person, or face serious

---

[12](...continued)
have a written contract that "shall set forth the method by which the commissions shall be computed and paid."

consequences.

Chou argues that Brody's explanation is merely a cover for keeping her commissions. This is one possible inference to be drawn from his testimony. Alternatively, one may infer that Brody sincerely, but erroneously, believed that Multisource could not pay her commissions until Chou complied with applicable state laws and regulations. Which of the competing inferences to make was for the bankruptcy court to decide, taking into account credibility issues and observation of the witnesses uniquely available at the trial. That court chose to credit Brody's testimony and explanation. Chou's disagreement with that determination and the resulting inference is insufficient, by itself, to overcome the considerable deference given to the bankruptcy court. Anderson, 470 U.S. at 574; see also Rodriquez v. Holder, 683 F.3d 1164, 1171 (9th Cir. 2012). Brody's explanation for why Multisource did not immediately pay Chou her commissions is neither illogical, nor implausible.

Chou fails to point to any other evidence or inconsistency within the record to support her contention that the bankruptcy court clearly erred in determining that Brody lacked fraudulent intent. To the contrary, the remainder of the evidence presented at trial is consistent with both Brody's explanation and the court's finding that he lacked fraudulent intent. First, the Salesperson Contract presented to Chou specifically detailed the proposed calculation of commissions, the duties of the parties, was to be dated, and required signatures of both parties. The agreement tracks Brody's understanding that California law required the parties to sign a detailed, written

21

contract.

Second, Chou never testified that she rejected the Salesperson Contract. Rather she stated only that she was uncomfortable with it and wanted more information. This suggests that both parties acknowledged the need for a more detailed, written contract despite the signing of her handwritten document. The fact that the state court credited deductions against Chou's claimed commissions further indicates that the handwritten document did not encompass all the contractual terms of the parties' relationship.

Third, Multisource, acting through Brody, did pay Chou one commission despite not having an executed Salesperson Contract. Brody explained that he approved the payment only after he discovered that Chou had improperly paid a client for closing costs. Brody discussed the situation with Chou and obtained assurances that she would not directly pay clients in the future. His testimony on this point is uncontradicted, and demonstrates a significant attempt to work with Chou, rather than defraud her.

Most importantly, Brody testified that due to the problems with Chou's files Multisource could not determine the expenses to be deducted from the gross commissions on Chou's loans. The amounts actually due to Chou were not determined until the state court trial; and then her net commissions were reduced by roughly $19,000.00.

Tellingly, the state court declined to award interest on the net commissions awarded to her. Under Cal. Civ. Code

22

3287(a),[13] interest is recoverable on "damages certain, or capable of being made certain by calculation," from the time the right to recover is vested. The state court's denial of interest on Chou's claims further supports Brody's argument that the amounts of the commissions owed were not ascertainable until trial.

Brody's explanation as to why Multisource did not pay Chou is both consistent with the other evidence admitted at trial, and supported by California's statutes and regulations governing a real estate broker's employment of salespersons. The bankruptcy court's reliance on that explanation to find that Brody acted in good faith and without fraudulent intent is well supported. Chou's view to the contrary does not render this finding clearly erroneous.

### B. The Court Did Not Err by Dismissing Appellant's § 523(a)(6) Claim.

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the

[13] The version of Cal. Civ. Code § 3287(a) in effect in 1992, when the Judgment was entered, provided:

Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state.

23

property of another entity." 11 U.S.C. § 523(a)(6). To establish a claim under § 523(a)(6), the creditor must prove "not only that the debtor **acted** willfully, but also that the debtor inflicted the **injury** willfully and maliciously rather than recklessly or negligently." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1207 (9th Cir. 2001)(citing Kawaauhau v. Geiger, 523 U.S. 57, 64 (1998)(emphasis in original)). "Willful" and "malicious" are separate components; both must be found to except a debt from discharge under § 523(a)(6). In re Su, 290 F.3d at 1146.

As with actions under § 523(a)(2)(A), "a simple breach of contract is not the type of injury addressed by § 523(a)(6)." Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992). The Ninth Circuit requires "[s]omething more than a knowing breach of contract . . . before conduct comes within the ambit of § 523(a)(6)," and has "defined that 'something more' as tortious conduct." Lockerby v. Sierra, 535 F.3d 1038, 1041 (9th Cir. 2008); see also In re Riso, 978 F.2d at 1154. Whether conduct is tortious depends upon state law. Lockerby, 535 F.3d at 1041-42. To prevail on her § 523(a)(6) claims, therefore, Chou must prove a tortious breach of contract that resulted in a willful and malicious injury. Id.

Evaluating Chou's § 523(a)(6) claim, the bankruptcy court again focused on Brody's belief that Multisource could not pay Chou her commissions until she signed the proposed form contract and provided her license. The bankruptcy court properly recognized that a willful injury is shown only if the creditor proves "either a subjective intent to harm, or a subjective

24

belief that harm is substantially certain." In re Su, 290 F.3d at 1144. It reemphasized that "[r]egardless of whether [Brody's] understanding of state law was correct, there was a good faith disagreement as to whether Chou was entitled to be paid." For this reason, the court found that Brody did not subjectively intend to harm Chou, nor did he believe that harm was substantially certain.

Chou does not distinguish between subjective intent to harm and a subjective belief that injury was substantially certain. She simply argues that the bankruptcy court erred by crediting Brody's explanations for Multisource's decision not to pay commissions to her. As explained above, however, the bankruptcy court's findings as to Brody's subjective beliefs and intent were neither implausible, nor illogical, and were supported by the record. That another trier of fact might draw different inferences from Brody's testimony does not render the bankruptcy court's factual finding clearly erroneous. Lewis v. Ayers, 681 F.3d at 999-1000. Such findings support the bankruptcy court's determination that Brody lacked a subjective intent to harm Chou.

Chou also argues that damages from a breach of contract were substantially certain and, therefore, Brody must have known that withholding the commissions would injure her. This argument, however, strays beyond the subjective inquiry required under In re Su, 290 F.3d at 1145-46. The intent to injure is not measured objectively, by what a reasonable person should have known, or understood, to be substantially certain. Id. at 1145. For this reason, "recklessly inflicted injuries do not

25

satisfy the § 523(a)(6) willfulness requirement." Plyam v. Precision Dev., LLC (In re Pylam), 530 B.R. 456, 464 (9th Cir. BAP 2015). It is the debtor's actual, subjective state of mind that is dispositive. In re Su, 290 F.3d at 1145-46. Even when evaluating whether a debtor had actual knowledge that harm was substantially certain, the focus remains "on what was actually going through the mind of the debtor at the time he acted." Id. at 1146 n.6.

Brody subjectively believed that state law prohibited payment of Chou's commissions until Multisource received the signed form contract and license from her. As recognized by the bankruptcy court, his legal analysis may have been faulty, but that does not equate to a subjective belief of certain harm. Multisource's failure to pay Chou her commissions was attributed to Brody's efforts to comply with state law rather than a willful refusal to pay outstanding commissions. As credited by the bankruptcy court, Brody necessarily lacked the subjective belief that harm to Chou was substantially certain; in his view she was not entitled to payment of those commissions until she complied with California law. Chou failed to prove that Brody had a subjective belief that nonpayment was substantially certain to injure her for purposes of establishing a willful injury to support her claim under § 523(a)(6).

Because a willful injury has not been established, analysis of the other two elements of her § 523(a)(6) claim – whether Brody tortiously breached any contractual obligations under California law, or whether such conduct resulted in malicious

26

injury – is unnecessary.[14]

**CONCLUSION**

The bankruptcy court found that the failure to pay Chou was borne of a good faith misunderstanding of controlling law rather than any wrongful refusal to pay her. Its finding negated any intent to defraud or to willfully injure Chou. Despite her continued disagreement with these findings, the bankruptcy court's findings, and the resulting decision, are neither illogical, nor implausible. Moreover, the remainder of the record supports denial of Chou's claims under §§ 523(a)(2) and (a)(6). We perceive no clear error in the bankruptcy court's decision. It is, therefore, AFFIRMED.

---

[14] Chou argues that the Ninth Circuit's decision in <u>Petralia v. Jercich (In re Jercich)</u>, 238 F.3d 1202 (9th Cir. 2001), requires reversal of the bankruptcy court's decision. In <u>Jercich</u>, an unpaid employee sought to hold his prepetition judgment for unpaid wages nondischargeable under § 523(a)(6). The debtor in <u>Jercich</u> was found to have willfully refused to pay outstanding wages while having the clear ability to do so. Instead, the debtor diverted the monies for his personal benefit, leading the state court to find that he had committed oppression under California Civil Code § 3294, warranting an award of punitive damages. Based on those particular circumstances, the debtor's nonpayment of wages was found to constitute tortious conduct resulting in willful and malicious injury. Here, however, the state court made no findings of oppression, and no punitive damages were awarded. There were also substantial issues regarding the calculation of Chou's commissions, resulting in sizeable credits against the amounts she claimed were due her. Thus, unlike <u>Jercich</u>, Chou's state court Judgment did not dispositively resolve the elements of her claim under § 523(a)(6). The bankruptcy court did not address whether there was tortious conduct or a malicious injury because Chou failed to prove a willful injury, and we agree that this failure of proof moots the need to make a finding on these other elements of § 523(a)(6).

27